SMITH *v.* STREET RAILROAD.

*(Jackson.* May 7, 1889.)

1. STREET RAILROADS. *Construction of charter. Abutting owners.*

Street railway company organized under our General Incorporation Act (Acts 1875, Ch. 142, § 13), having, by lawful contract with the city, permission to construct its road over the public streets, is not required, in addition, to obtain consent of abutting lot owners where they do not own the fee in the street, or in any case where the proposed road is not of a character to be an additional burden upon the fee in the street.

Act construed: Acts 1875, Ch. 142, § 13; Code, §§ 1920–1925 (M. & V.)

2. SAME. *Not additional burden upon the fee, when.*

Street railroad operated by horse power is not an additional burden upon the fee in the street, but an improved use of the street strictly within the original purpose for which it was appropriated to public use.

Case cited and approved: 38 Mich., 63 (S. C., 31 Am. Rep., 309.)

*Question reserved:* Is a steam dummy line an additional burden upon the fee in the street?

3. SAME. *Powers. Liability to abutting owners. Ingress and egress.*

Street railway companies have no right of eminent domain; and can acquire no right by contract with city to obstruct, for purposes of its construction, the right of ingress and egress appurtenant to the abutting lots, even where the owners thereof have no fee in the street. But construction of road upon city's established grade of the streets, under a lawful contract with the city authorities, and in a lawful manner, exonerates the company from liability, in this particular, to the abutting owners.

4. SAME. *Unlawful operation of road.*

After a street railroad has been lawfully constructed the company is liable to abutting owners for any damages resulting to them from the unlawful or excessive use of the road.

Smith *v.* Street Railroad.

Cases cited and approved: Bingham *v.* Railroad, *ante*, p. 522; 31 Am. Rep., 312; 108 U. S., 317.

5. MEASURE OF DAMAGES. *Nuisance.*

The rule laid down in Harman *v.* Railroad, *ante*, p. 614, approved.

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

JOHN D. MARTIN for Smith.

TURLEY & WRIGHT and MYERS & SNEED for Street Railroad.

CALDWELL, J. This action was commenced in the Circuit Court of Shelby County by Tillie M. Smith, an abutting lot owner, to recover damages from the East End Street Railway Company for the alleged unauthorized construction and unlawful operation of a street railway line upon and along Monroe Street, in the city of Memphis.

Verdict and judgment being adverse to the claim of plaintiff, she appealed in error to this Court, and has here assigned numerous alleged errors in the action of the Trial Judge, on account of which she seeks a reversal and new trial.

The defendant company laid out and constructed its railway under a "contract with the city authorities," but without any contract or agreement with the owners of lots abutting on the street.

The plaintiff did not give her consent, and she claims that the use and occupation of the street by the defendant without her permission is a violation of her rights as an abutting lot owner, and therefore illegal. Her contention is that the defendant's *charter expressly required it to obtain the consent of abutting lot owners,* as well as that of the city authorities, before it could lawfully construct and operate its road in a public street.

Her counsel submitted this construction of the charter in appropriate written instruction, and requested the Trial Judge to give it to the jury as a part of his charge. This His Honor declined to do, and, instead of charging as requested, told the jury that, having obtained the consent of the city by its contract, the defendant had the right to construct and operate its road upon the street without the consent of the plaintiff or of other persons owning property on the side of the street.

This action of the Court is assigned as error, and upon that assignment the charter comes up for construction.

The defendant was incorporated under Section 13 of Chapter 142 of the Acts of 1875, which section was subdivided by the compilers, and carried into the Code (M. & V.) at §§ 1920 to 1925 inclusive. By operation of law, and in fact, all

the provisions of that section are embodied in and made parts of the defendant's charter. So much of it as bears upon the question now under consideration is as follows:

"The said company is authorized to consummate any contract with the city authorities of the town aforesaid, or with the County Court if the route extends or is to be extended beyond the limits of said incorporated town, or with private individuals necessary to get the right of way along the public streets of the city, or along the public roads of the county; *provided*, that no one of the streets of said city shall be used by said company, nor shall any rails be laid down until the consent of the city authorities has been first obtained, and an ordinance shall have been passed prescribing the terms on which the same may be done; or, if said road extends into the country, the consent of the County Court must be first obtained." Code, § 1921.

This provision of the law is confessedly not so perspicuous as might be desired. Nevertheless, we think the intention of the Legislature is reasonably certain. The general purpose was to facilitate what the Act calls street railroads, whose lines might extend into the country upon the public roads of the county, and in some instances—in the town or out of it—pass over the property of private individuals. The right to exercise the power of eminent domain was not conferred, but withheld, and the only method provided by which the necessary

right of way may be obtained is 'the consummation of a contract with the city authorities, the County Court, or private individuals, the manifest intention being that the company must get the permission of the city authorities to run its road upon public streets, of the County Court to extend the line on the public roads of the county, and of private individuals when it is deemed necessary to pass over property exclusively their own.

Each abutting lot owner has an easement of way in the public street which the law recognizes as his private property (*Anderson* v. *Turbeville*, 6 Cold., 158), but that affords no good reason why he should be consulted about the construction of a street railway, when it is remembered that the town or city authorities hold the streets in trust for the public (*Humes* v. *Mayor*, 1 Hum., 403; *Mayor* v. *Brown*, 9 Heis., 1), and have the better means of determining what the convenience of the public demands.

The interpretation contended for by the plaintiff would destroy the Act itself, and make it a dead letter upon the statute book, for it cannot be expected that any company *could obtain the consent of every abutting lot owner,* so varied are the tastes, thoughts, and habits of persons composing a large community. Moreover, married women, minors, and persons of unsound mind, are not competent to make the required contract. So it is seen at once that the effect of such a construction would be to exclude street railways from every street on

Smith *v.* Street Railroad.

which an eccentric person, or person under disabil-
ity, might own property, though the desire and
demand for them by the other abutting lot owners,
and the city authorities, might be unanimous and
earnest.

It cannot be supposed that the Legislature went
through the form of passing a general law, intend-
ing at the same time that its objects should or
might be defeated entirely by the will or incom-
petency of one person in a commuity, when every
other person and the recognized legal agency of
the public were endeavoring to get the benefit of
the legislation. Certainly the Courts will not infer
that such was the legislative intent when it is not
clearly so expressed.

It is altogether right and reasonable to require
the consent of private individuals to the use of
property in which the public has no interest. It
is with respect to the use of such property, and
not with respect to the use of public streets or
public roads, that the law requires private individ-
uals to be consulted. If the owner be incompe-
tent to make the requisite contract it cannot be
made, and the property cannot be used, for the
public owns no interest in it, and there is no one
to represent the incompetent person as in the case
of public highways in the town or country.

Again, the correctness of the interpretation we
have given the Act is clearly shown by the pro-
viso which permits the construction of the railway
along the streets after the consent of the city

authorities has been obtained, and terms have been prescribed by ordinance, without reference to the consent of private individuals. It would be idle to authorize the company to make a contract with private individuals for the use of a public street, and then empower the company to construct its road in such street on the authority of the city alone.

No additional light is thrown upon the question by the later provision (found in Code, § 1925), that, " The powers herein granted are in no manner to interfere with the rights of private citizens or private property." The meaning of that provision is that plainly expressed by the words used. It is a reservation of the legal rights of private persons as they existed before, without increase or diminution—a saving of all rights of action for any unlawful use or obstruction of the public highways, or other wrongs and abuses.

The plaintiff averred that, under her deed and the law applicable, she owned the fee in the soil to the center of the street, and that the use and occupation of the street by the defendant was the imposition of an additional burden for which she was entitled to recover damages. On the refusal of the Court to so charge she assigns error.

It is well settled that a steam railway is a burden not ordinarily contemplated in the dedication or condemnation of land for a public street, and, as a consequence, that the original owner, in whom the ultimate fee resides, may recover com-

pensation for the subjection of the fee to such new and independent use. 2 Wood's Railway Law, 724 and 740; 1 Rorer on Railroads, 518; 2 Dillon's Mun. Corp., §§ 703, 724, and 725; Mill's on Eminent Domain, § 204; *Railroad* v. *Heisel*, 31 Am. Rep., 310, S. C., 38 Mich., 64; Am. and Eng. Ency. of L., Vol. 6, pp. 552 and 553, and cases cited; also *Bingham* v. *Railroad*, 3 Pickle, 522.

A street railway, however, is not regarded as an additional burden upon the fee, but as an improved use strictly within the purpose for which the street was laid out in the first instance, for which no additional compensation is, ordinarily, allowable. 2 Wood's Railway Law, 739; 2 Dillon, §§ 722, 724, 725; Mill's on Eminent Domain, § 205; 31 Am. Rep., 309, S. C. 38 Mich., 63; Am. and and Eng. Ency. of L., Vol. 6, p. 555, and cases cited.

Whether the fact that the cars upon a street railway are propelled by "a dummy steam engine," as in this case, instead of by horse power, so changes the use as to make it an additional burden for which damages are recoverable need not, be decided in this case, for, in reality, the plaintiff is not the owner of the fee in the street.

It is true that her deed calls for Monroe Street as one of the boundaries of her lot, and that this, as a matter of law, would ordinarly invest her with the fee in the soil to the center of the street, *ad filum viæ*, as a call for a non-navigable stream of water carries title to the thread of the

stream, *ad filum · aquæ.* But that general rule cannot be applied in this case, for the reason that the person under whom the plaintiff claims title to her lot did not himself own the fee in the street at the time she obtained her deed. He had previously owned the land in the street, as well as the abutting lots; but at the time plaintiff acquired title to her lot he had no title to the soil of the street, having long before divested himself of the same by an absolute deed in fee, with covenants of warranty, to the city. So that he, at most, had only a private easement of way in the street, and not the fee, when plaintiff bought and took a deed to her lot; and it cannot, of course, with any show of reason or law, be claimed that she took more than he had to give.

That the city first condemned the land for a street does not change the legal effect of his deed, which, in appropriate language, passes the whole fee to the soil for a full and fair consideration recited.

The Court instructed the jury that the plaintiff, as an abutting lot owner, was entitled to the free and unmolested use of the street for purposes of ingress and egress to and from her lot, and that the impairment of the use for such purposes, if shown by the evidence, would be an element of damage in this case.

Plaintiff's counsel insists that this instruction is erroneous, because it confines her right of recovery to the impairment of her use of the street for purposes of *ingress and egress merely.*

We think the charge as favorable to the plaintiff as it could have been under the law. An abutting lot owner, such as the plaintiff is shown to be, without more than an easement of way, and not owning the ultimate fee in the soil, certainly enjoys all that reason entitles her to claim, and all that the law will allow when she has the free and unobstructed use of the street for all purposes of ingress and egress. For such purposes she may use the whole street, or so much of it as may be necessary; but in so doing she cannot have the exclusive use for herself at all times, nor can she recover damages for the use of it by others, unless such use be excessive or incompatible with her rights as already defined.

Her only private property in the street is her right of ingress and egress; she has no other right or interest in the street which is not to be enjoyed equally by each and every member of the community and the public generally.

To entitle her to claim damages she must sustain some private or particular injury; something must be done which injures her access to her lot on the street before she can sue successfully. Inconvenience or annoyance, which she suffers in common with the public, gives no right of action. 1 Rorer, 521; 31 Am. R., 312; Am. and Eng. Ency. of L., Vol. VI., p. 550, and cases cited.

As to the effect of the contract with the city authorities, the Trial Judge charged the jury, in substance, that the defendant would not be liable

to abutting lot owners for damages resulting from the construction of its road along the street, if its work was done in compliance with the terms of its contract with the city.

This is not a sound proposition. Manifestly an unlawful contract with the city could not protect the defendant in doing a wrong to a private person or his property. No contract can legalize an unlawful thing, or shield the wrongdoer from the legal consequences of his wrongful act. The city can no more authorize another to place an unlawful obstruction in the street than it can do so itself.

This error, however, is harmless in this case, for the record shows that the contract in question was a proper and lawful one, and that the defendant constructed its road according to the contract, and upon the city's established grade of the street.

Having constructed its road in a lawful manner, and in accordance with a lawful contract with the city authorities, as required by its charter, the defendant can be liable in damages to the plaintiff only for the unlawful use and operation of its road. Any use that may be excessive or amount to a nuisance will be unlawful, and give the plaintiff a right of action. 31 Am. R., 312; 108 U. S., 317; 1 Rorer, 521; *Bingham* v. *Railroad,* 3 Pickle, 522.

For such unlawful acts, if done, the law allows successive actions. A discussion of the right

Smith *v.* Street Railroad.

of successive actions for recurring nuisances and the measure of damages in such cases is found in an opinion delivered by Special Judge Dickinson, at the present term, in the case of *Harmon* v. *Railroad*, 3 Pickle, 614.

Objection is also made to the charge with respect to a certain water tank erected and used by the defendant on another lot in the vicinity of the plaintiff's property. It is not necessary to notice this charge further than to say that the plaintiff could, in no event, have a recovery for damages resulting from the proximity and use of the tank, because she makes no claim for such damages in her declaration.

The other errors assigned need not be mentioned in detail. Most of them are necessarily dependent upon and disposed of by rulings already made in this opinion, and the others are not material.

Let the judgment be affirmed.