THE CHESAPEAKE AND POTOMAC TELEPHONE COM-
PANY OF BALTIMORE CITY *vs.* LUCY T. MACKENZIE,
by her next friend, GEORGE N. MACKENZIE.

*Telephone company—Erection of Pole in the Footway—
Injunction—Special demurrer—Liability of Telephone com-
pany for Damages to Abutting owner—Ordinance of the
City of Baltimore—Evidence—Measure of Damages—In-
struction.*

A declaration alleging that the plaintiff was possessed of a valu-
able warehouse, and while so possessed, the defendant, a tele-
phone company, without her authority or consent, and without
making or offering to make compensation therefor, planted a
large and unsightly pole in the footway in front of said ware-
house, which obstructed and prevented the comfortable and
reasonable and beneficial enjoyment and use of said premises,
but not alleging the mode and manner of the obstruction and
interference, is sufficient under section 3 of Article 75 of the

Chesapeake and Potomac Telephone Co. *vs.* Mackenzie.

Code, which provides that nothing more is needed in a declaration than a plain statement of the facts which are relied on to sustain a recovery.

Section 119 of Article 75 of the Code, respecting the pleadings in any action in which a writ of injunction is claimed, provides that "the defendant may demur to so much of the plaintiff's declaration as claims such writ, and such demurrer shall raise the question whether the facts stated as the ground of such claim disclose any such legal duty as that so sought to be enforced, but shall be subject to all rules governing general demurrers at law, both as to the proceedings thereon and thereafter." HELD :

That the demurrer thus prescribed is a special demurrer, and a general demurrer, whether interposed directly to the declaration or to some subsequent pleading, will not be sufficient to raise the question.

Section 40 of Article 3 of the Constitution provides that: "The General Assembly shall enact no law authorizing private property to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid, or tendered to the party entitled to such compensation." By sections 224 and 232 of Article 23 of the Code, telephone companies, incorporated under the General Corporation Law of the State, are empowered to construct their lines upon the streets and highways, provided their fixtures, posts and wires do not "interfere with the convenience of any land owner more than is unavoidable." By section 224 it is provided that said companies shall be responsible for any damages that may be occasioned by the erection, continuance, and use of such fixtures ; and that in any action brought for the recovery of damages, the company may elect to have included the damages for allowing the said fixtures permanently to continue. But no person is entitled to sue for damages until the company, after due notice, has failed or refused to remove, in reasonable time, the fixtures complained of. HELD :

That neither the rights of the owner of the reversion in the bed of the street, nor those of the abutter upon a street, are abridged by the statute, and a telephone company is responsible for any damage done to the same by the erection and maintenance of its poles, and compensation must be made therefor.

An ordinance of the Mayor and City Council of Baltimore, giving a telephone company the right to plant and maintain its poles

upon the footway of a street, in front of the warehouse of the plaintiff, does not enlarge the authority conferred upon the company by said statute.

Evidence of the amount which a particular person, if he owned the property, would, in his opinion, give not to have a telephone pole placed where it was, or of the amount he would give to have it taken away, or of his willingness to pay more rent for the property with the pole removed, or of the extent of the depreciation of the rental value of the property for the purposes of his own business, is inadmissible to show the extent of the damage sustained by the erection and continuance of the pole.

The true measure of damages for the erection and maintenance of a telephone pole in the footway, in front of the plaintiff's premises, is not what a particular person would be willing to charge for having the pole put up or remain, nor the amount some other person might consider the rental value was depreciated for the purposes of his business; but where the land of the plaintiff is not taken, nor the soil actually invaded, the measure of damages is, either, the extent to which the rental or usable value of the particular property has been diminished by the trespass or injury complained of; or the difference in the value of the property before the construction of the pole, and its value afterwards, if the depreciation in value has been caused by the erection and maintenance of the pole.

Where the *narr.* counts upon a possession by the plaintiff of the warehouse, and an interference with her use and enjoyment thereof by the erection of a telephone pole, but does not declare for an injury to the reversionary interest in the warehouse to which she was entitled, and the proof shows that the premises were in the occupancy and possession of a tenant of the plaintiff, an instruction, which did not point to the pleadings, that there was no evidence that the plaintiff had sustained damage by the erection of the pole, is properly refused, when there is evidence sufficient to sustain any action by the plaintiff.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court. Section forty of Article three of the Constitution, to which reference is made in the opinion of the Court is as follows:

"The General Assembly shall enact no law authorizing private property to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid, or tendered to the party entitled to such compensation."

*Exceptions One to Eleven,* inclusive, relating to the admissibility of evidence adduced by the appellee upon the question of damages, are sufficiently stated in the opinion of the Court.

*Twelfth Exception.*—The plaintiff offered three prayers, the first and third of which, the Court (DUFFY, J.) rejected; the second as follows, was granted:

If the jury find from the evidence that the defendant erected the pole as described in the evidence, and that the equitable plaintiff is the owner of the leasehold interest in the premises, in front of which in part the pole was erected, and that the defendant received legal notice to remove the said pole, but still maintains the same in place, as originally erected, and that the plaintiff has been injured thereby, then the jury will find their verdict for the plaintiff in such sum as will compensate her for the injury.

The defendant offered three prayers, the first of which was rejected, and the others were granted. The first and third prayers were as follows:

1. That if the jury shall find that the plaintiff was the owner of the premises No. 22 South Charles Street in the City of Baltimore, mentioned in the declaration in this case, and that the defendant was, at the time of the occurrence of the grievances alleged in the declaration, incorporated under the law of Maryland, relating to telegraph and telephone companies, and shall further find that the defendant is one of the two telephone companies mentioned and referred to in the Ordinance of the Mayor and City Council of Baltimore, approved May

9th, 1889, which has been given in evidence in this cause; and shall further find that the pole complained of in the declaration of the plaintiff was not erected, maintained and used by the defendant on the premisès of the plaintiff, No. 22 South Charles Street, but was so erected, maintained and used on the public footway, in front of the said premises of the plaintiff, at a point next to the curb and on the dividing line between the premises of the plaintiff and the adjoining premises of the north; and shall further find that said premises, No. 22 South Charles Street, have not been in the actual use and occupation of the plaintiff since said pole was erected, but have been, from time to time, since said erection, rented to tenants, then that the said plaintiff is not entitled to recover, because there is no evidence in the cause legally sufficient to prove that the plaintiff has sustained any damage by the erection, continuance and use of said pole by the defendant.

3. That the jury can allow to the plaintiff in this case no damages for any acts of the defendant, in connection with the subject-matter of this suit, committed by the defendant after the 29th of April, 1889, the date when suit was instituted in this action.

To the granting of the plaintiff's second prayer, and to the rejecting of the defendant's first prayer, the defendant excepted, and upon the verdict and judgment being for the plaintiff, appealed.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, and McSHERRY, J.

*Charles J. M. Gwinn,* for the appellant.

*George Norbury Mackenzie,* and *John V. L. Findlay,* for the appellee.

Chesapeake and Potomac Telephone Co. *vs.* Mackenzie.

McSHERRY, J., delivered the opinion of the Court.

The declaration in this case alleges "that the plaintiff is possessed of a lot of ground, with the improvements thereon, being valuable warehouse property, known as No. 22 South Charles street, and while so possessed the defendant, without her authority or consent, and without making or offering to make compensation therefor, planted a large and unsightly pole in the footway, in front of said premises, which obstructs and prevents the comfortable and reasonable and beneficial enjoyment and use of the said premises, and, though repeatedly notified to remove the said pole, refuses so to do, although a reasonable time for the removal of the same has elapsed, &c." There is added an application for an injunction under *sec.* 117 *of Art.* 75 of the Code. The defendant filed three pleas. The second was the plea of not guilty, and the first and third are as follows, viz., "That the defendant, at the time of the alleged trespass, was duly incorporated as a telephone company under the laws of the State of Maryland, and was entitled as a corporation so formed, in the prosecution of its business, and for the purpose thereof, to erect and maintain the pole upon the footway of South Charles street, in the City of Baltimore, in front of the warehouse of the plaintiff, complained of in the declaration of the plaintiff, without making, or offering to make, compensation therefor to the plaintiff; and that the alleged trespass complained of in the declaration of the plaintiff was a use by the defendant of its said right." Third: "That the plaintiff ought not further to have or maintain her aforesaid action against it, because it says that by a certain ordinance of the Mayor and City Council of Baltimore, approved on the ninth day of May, in the year 1889, and since the institution of the suit in this cause, it, the said defendant, was and is authorized to maintain its said pole in and upon the footway of South Charles

street, in the City of Baltimore, in front of· the warehouse of the plaintiff complained of in the declaration of the plaintiff, for the period of two years after the said date of the approval of said ordinance, and so long as said pole is necessary to be maintained by the defendant, for the purpose of making distribution of and forming connections between any wire or wires forming part of the underground wire cables authorized by said ordinance to be laid within the limits of the City of Baltimore." To these pleas—the first and third—the plaintiff demurred, and the Court of Common Pleas sustained the demurrer. It is insisted by the appellant, the defendant below, that, as the demurrer mounted to the first fault in the pleading, the Court ought to have ruled the declaration to be bad, and its failure to do so is assigned as the first error for review on this appeal. We are, of course, confined to the declaration itself in determining its legal sufficiency. Neither the averments of the pleas nor the evidence in the record can be looked to or considered in passing upon that question. The forms· of pleading have been materially changed by legislation, and since the adoption of the simplification Act, which is substantially incorporated in the Code, nothing more is needed in a declaration than a plain statement of the facts which are relied on to sustain a recovery. *Code, Art.* 75, *sec.* 3. Whilst it does not appear from the *narr.* whether the footway in front of the warehouse premises is a public thoroughfare or not, or whether the title to it is in the plaintiff, it is distinctly alleged that the plaintiff is possessed of a valuable warehouse property, and that without her authority or consent the defendant planted a large and unsightly pole in front thereof, which obstructs and prevents the comfortable and reasonable and beneficial enjoyment and use of the premises. As framed, the *narr.* alleges a direct interference by the defendant with the use and

enjoyment by the plaintiff of her property. And it further alleges that this interference was without her authority or consent. If these facts be true, why do they not furnish a ground of action? That the appellee had the right to the comfortable, reasonable, and beneficial use and enjoyment of her property is undeniably true, unless the contrary be averred and shown. That the unauthorized obstruction of, or interference with, that right is a wrong which will support an action for damages cannot be open to controversy. Though it might have been more artificial pleading had the mode and manner of the obstruction and interference been set forth in the declaration, they were not necessarily elements of the injury complained of, but rather matters of proof, showing the character and extent of that injury. The *narr.*, on its face, does not declare for an obstruction of the footway or the street; and it was, therefore, not necessary to allege that, by reason of the plaintiff's possession of the premises, she was entitled to the way, in the exercise of which she was interfered with by the defendant. The averment is that the pole thus planted in the footway obstructed, not the footway, but the plaintiff's use and enjoyment of the property in her possession—her warehouse; and that averment, it seems to us, is, under the Code, sufficient, if proved, to sustain an action. This conclusion is founded, of course, exclusively and solely upon the face of the declaration, without any reference to other parts of the record.

It has been further insisted, as a reason for holding the declaration bad, that the prayer for an injunction was improperly included therein, because, so it is alleged, the facts disclosed by the *narr.* do not justify the application of that remedy. *Sections* 116 to and including 128 *of Art.* 75 of the Code make provision for the issuing of writs of injunction and mandamus by Courts of law in certain actions instituted in these Courts. Under

Chesapeake and Potomac Telephone Co. *vs.* Mackenzie.

these provisions, the prayer for an injunction to restrain the appellant from continuing the pole in its place, and to order the removal thereof, was added to the declaration. By *sec.* 119 it is provided that, "the defendant may demur to so much of the plaintiff's declaration as claims such writ, and such demurrer shall raise the question whether the facts stated as the ground of such claim disclose any such legal duty as that so sought to be enforced, but shall be subject to all rules governing general demurrers at law, both as to the proceedings thereon and thereafter." Now, it was argued that the general demurrer filed by the plaintiff to the defendant's first and third pleas mounted, according to the well settled rule, not only to the declaration proper, but also to the prayer for relief by injunction. Whether this view is correct or not depends upon the meaning of the section from which we have just quoted. The remedy by injunction from a Court of law is a purely statutory remedy. The mode to be pursued for obtaining it is defined and pointed out in the Code. If the facts stated in the declaration do not disclose a case which will justify the issuing of such a writ, the defendant may demur "to so much of the plaintiff's declaration as claims such writ," and the statute expressly declares what question that demurrer shall raise. It is consequently a special demurrer that is thus provided for notwithstanding the antecedent provision in *section* 6 of the same Article that no special demurrer shall be allowed in civil cases. Can a general demurrer be treated as equivalent to or the same as this special demurrer? If so, then the general demurrer to the pleas would reach any defect in the prayer for injunctive relief in the *narr.* Inasmuch as the demurrer prescribed by the statute is a special demurrer, it seems to us quite apparent that a general demurrer would not answer, if interposed by the defendant directly to the *narr.* Of course, therefore, a general

Chesapeake and Potomac Telephone Co. *vs.* Mackenzie.

demurrer interposed by the plaintiff to pleas of the
defendant could not serve any other or wider purpose, or
raise any other question, than a general demurrer filed
by the defendant to the declaration would itself have
done, unless the clause declaring that the special de-
murrer "shall be subject to all rules governing general
demurrers at law, both as to the proceedings thereon
and thereafter" was intended to convert the special into
a general demurrer.  No such intention is manifested
by the language used, as we read it.  The special de-
murrer is declared to be subject to the rules governing
general demurrers, only so far as respects the proceed-
ings on a general demurrer, and the proceedings after a
ruling is made thereon.  In other words, when a special
demurrer under this statute is interposed to the declara-
tion, the same proceedings shall be had as are provided
by the rules of law with reference to proceedings on and
after a general demurrer.  That is to say, the right to
amend, if the demurrer be sustained, and the right to
plead over, if it be overruled, are preserved, precisely
as in the case of similar rulings on a general demurrer.
This, and this only, is the effect of the clause just quoted
from the Code.  Our interpretation of the statute, then,
is this:  If a defendant desires to raise a question as to
whether the additional relief by way of injunction or
*mandamus*, is appropriate under the facts disclosed by
the declaration, he must do so by special demurrer, and
a general demurrer, whether interposed directly to the
declaration or to some subsequent pleading, will not be
sufficient to raise that question.

We now come to the consideration of the ruling of the
Court sustaining the demurrer to the first and third
pleas filed by the defendant.  These pleas present some
of the principal questions discussed in the argument at
the bar.  They rely, as a defence to the action, upon an
authority which the appellant claims to have under the

Code, and under an ordinance of the Mayor and City Council of Baltimore, to plant, in its present position, the pole complained of, without making or offering to make compensation to the appellee. By *Sections* 224 *and* 232 *of Article* 23 of the Code, telegraph and telephone companies, incorporated under the General Corporation Law of this State, are empowered to construct their lines along and upon any postal roads and postal routes, roads, streets and highways, provided their fixtures, posts, and wires do not "interfere with the convenience of any land owner more than is unavoidable." It is expressly provided in *section* 224 that "the said corporation shall be responsible for any damages which any person or corporation may sustain by the erection, continuance, and use of such fixtures." It is further provided that, in any action brought for the recovery of damages, the company may elect to have included the damages for allowing the said fixtures permanently to continue. The following proviso is then added : "Provided, that no person or body politic shall be entitled to sue for or recover damages, as aforesaid, until the said corporation, after due notice, shall have failed or refused to remove, in reasonable time, the fixtures complained of." It is not necessary to allude to the ordinance of the Mayor and City Council of Baltimore, for the reason that whatever authority the appellant possesses, in reference to the planting and maintenance of the pole in question, must be derived from and depend on the Act of Assembly. The ordinance could not enlarge that authority. To what extent, then, does the statute justify the action of the appellant, and protect it from liability? The planting of a telegraph or telephone pole in a highway or street is not a public nuisance, because the Legislature has declared that it shall not be ; but the General Assembly was powerless to subject the reversionary interest in the bed of such highway or street to an additional servitude,

without making appropriate provision for just compensation to the owner. *Phipps, &c. vs. The Western Maryland Railroad Co.*, 66 *Md.*, 319; *American Telephone and Telegraph Co. vs. Pearce, et al.*, 71 *Md.*, 535. In the case last referred to, this Court held that planting telephone poles upon the right of way acquired by a railroad company was, when the telephones were used for purposes other than the operation of the road, an additional servitude imposed upon the soil, which entitled the owner of the reversion to an injunction against the telephone company, to restrain it from so appropriating the land until compensation, to be ascertained in the method prescribed in *sec.* 40, *Art.* 3 of the Constitution of the State, should be first paid or tendered. And so the condemnation of private property for a highway subjects the land so taken merely to an easement in favor of the public, and does not divest the owner of the fee. *Thomas vs. Ford*, 63 *Md.*, 346. Planting telephone or telegraph posts upon a public highway in the country is an appropriation of private property, and unlawful, unless the right to do so is acquired by contract or condemnation. *West. Union Tel. Co. vs. Williams*, 86 *Va.*, 696; *Broome vs. New York and New Jersey Telephone Co.*, 42 *N. J. Eq.*, 141. The use to which *streets* in a town or city may be lawfully put are greater and more numerous than in the case of an ordinary road or highway in the country. With reference to the latter, as we have just observed, all the public acquires is the easement of passage and its incidents; and hence the owner of the soil parts with this use only, retaining the soil, and by virtue of this ownership is entitled, except for the purposes of repair, to the earth, timber, and grass growing thereon, and to all minerals, quarries, and springs below the surface. But with respect to *streets* in populous places the public convenience requires more than the mere right of way over and upon them. They may need to be graded, and

therefore the municipal authorities may not only change
the surface, but cut down trees, dig up the earth, and
may use it in improving the street, and may make cul-
verts, drains, and sewers upon or under the surface.
Pipes may also be laid under the surface when required by
the various agencies adopted in civilized life, such as
water, gas, electricity, steam, and other things capable of
that mode of distribution.    2 *Dillon Mun. Cor., Secs.* 656*a*
*and* 688.    Subject to these and other like rights of the
municipality and the public to the use of a street for street
purposes, the owner of the fee in the bed of the street
possesses the same right to demand compensation, for
additional servitudes placed thereon, that the owner of
the bed of a highway in the country is entitled to.    If,
then, the fee in the bed of the street be in the appellee,
the planting of the pole was an additional servitude
imposed upon her land, for which she could claim com-
pensation, and the Act of Assembly could not deprive
her of it.    But in many instances the beds of the streets
are owned in fee by the city, and in others the fee is
vested in the original owners of the land or their heirs,
and does not belong to the owners of the lots abutting
on the streets.    If the fee be in the city, or in some
third person, then, first, what are the rights, in a case
like this, of the owner of a lot abutting on the street?
and, secondly, how are those rights affected by the pro-
visions of the Code relied on in the pleas?    There is
some diversity of opinion in the decided cases upon the
first of these questions, but all agree in going at least this
far—and we are not required to go any farther in deciding
this appeal—that where the fee or legal title has passed
from the original proprietor, as in cases where the land
has been acquired for streets by the exercise of the right
of eminent domain, the adjoining owner cannot main-
tain an action for injuries to the soil, or ejectment, but
he nevertheless has a remedy for any special injury to

Chesapeake and Potomac Telephone Co. *vs.* Mackenzie.

his rights by the unauthorized acts of others.   Hence, if an appropriation of a street by a person or body corporate, even under legislative and municipal sanction, unreasonably abridges the right of adjacent lot-owners to use the street as a means of ingress and egress, or otherwise, they are thereby deprived of a right without compensation; and an action will lie against the person or corporation guilty of usurping such unreasonable and exclusive use, for the recovery of such immediate and direct damages as the abutter may sustain.   *Elizabeth, Lexington and Big Sandy Railroad Company vs. Combs,* 10 *Bush (Ky.,)* 382; *Schurmeier vs. St. Paul and Pacific R. R. Co.,* 10 *Minn.,* 82, affirmed in 7 *Wall.,* 272; *Cooley Con. Lim.,* 556.   Indeed, this is merely the application of familar principles of the common law.

Whether, then, the appellee be the owner of the reversion in the bed of the street, or only entitled to the rights of an abutter on the street, the pleas demurred to set forth no facts which furnish a defence to the action; because as against the owner of the fee the provisions of the Code relied on in the pleas are inoperative for the reasons we have given; and, as respects the owner of a lot abutting on the street, they expressly reserve, and they could not have validly denied, his right to recover for such direct and immediate injuries as he might sustain by the construction of a line of telegraph and telephones upon a public street or thoroughfare. Whether the damages to be recovered shall be upon the basis of the permanent occupation of the premises, or only for the period up to the bringing of the suit, is left to the election of the company; and it would necessarily follow if the recovery should be limited at its instance to the latter period, that subsequent suits could be brought; and in an appropriate case an injunction could be procured to prevent a continuance of the interference. It results, then, that neither the rights of the owner of

4                            v. 74.

the reversion, nor those of the abutter upon a street, are abridged by the statute, and that, in so far as that statute attempts or was intended to effect that result, it is nugatory and inoperative. As a consequence, whatever rights the appellant did acquire under the statute are subordinate to the property rights of the appellee, and the pleas which rely upon the statute and the ordinance, as giving the appellant authority to plant and maintain its posts and wires without regard to the injury caused the appellee, were very properly declared to be no answer to the action.

The remaining questions involved are presented by the exceptions taken to the admission of evidence, and to the rulings of the Court on the prayers for instructions to the jury. There are twelve of these exceptions. Eleven of them relate to the admissibility of evidence adduced by the appellee upon the question of damages, and the twelfth to the granting of the appellee's second prayer, and the rejection of the appellant's first.

It is not necessary to discuss separately the exceptions which relate to the measure of damages, for they all present the same question, substantially. The appellee proved by several witnesses the amount which, if they owned the property, they would, in their opinion, give not to have the pole placed where it is, and the amount they would give to have it taken away. She further proved by another witness that, with the pole removed, *he* would be willing to pay more rent for the property than he would with the pole standing where it is; and by still another, that *for the purposes of his business* he would make a difference of five hundred dollars in the rental value of the premises. None of this testimony was admissible. The true measure of damages in such a case as this is not what a particular individual would be willing to charge for having the pole put up or remain; nor the amount some other person might consi-

der the rental value was depreciated for the purposes of his business; but where the *land* of the plaintiff is not taken nor his soil actually invaded, the measure of damages, as adjudged in many cases, is, either, first, the extent to which the rental or usable value of the particular property has been diminished by the trespass or injury complained of; *Balto. and Ohio Railroad Co. vs. Boyd, et al.*, 67 *Md.*, 41; *Wood, &c. vs. State, use of White*, 66 *Md.*, 61; or, secondly, the difference in the value of the property before the construction of the pole, and its value afterwards, if the depreciation in value has been caused by the erection and maintenance of the pole. *Shepherd vs. Baltimore and Ohio Railroad Co.*, 130 *U. S.*, 426.

Lastly, with regard to the prayers. There was no error in rejecting the first prayer of the appellant, because the prayer failed to refer or point to the pleadings. The correctness of this ruling must depend, not upon the state of the pleadings, but upon the evidence to which alone the prayer makes reference. *Giles vs. Fauntleroy*, 13 *Md.*, 136. The declaration counts upon a possession by the plaintiff of the warehouse, and an interference with her use and enjoyment thereof, and the proof shows that the premises were in the occupancy and possession of a tenant of the plaintiff, and not in the possession of the plaintiff, who was only entitled to the reversion. For an injury to the *possession*, the tenant in possession alone can sue, though if the same injury affects the *reversion* the reversioner may sue in case. 1 *Ch. Pl.*, 63. The evidence in the record shows that the appellee does not own the reversion in the bed of Charles street; and it further shows that no damage was done to the plaintiff's *possession* because she was not in possession. The *narr.* does not declare for an injury to the reversionary interest in the warehouse, as it might have done, and the prayer did not point to the pleadings; but,

if the evidence adduced was sufficient to sustain any action by the appellee, it would have been error in the Court to grant a prayer declaring that there was no evidence that the plaintiff had sustained damage by the erection of the pole, unless the prayer had made reference to the pleadings.

There is nothing in the appellee's granted prayer of which the appellant can complain. Taken in connection with the appellant's third instruction the recovery was limited to the time that suit was brought.

For the error in admitting the evidence objected to in the first eleven exceptions the judgment must be reversed, and a new trial must be awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 24th March, 1891.)