## BALTIMORE CITY COURT

Filed October 27, 1898.

VINCENT I. MONMONIER,
TRUSTEE,
VS.
BALTIMORE CITY PASSENGER
RAILWAY COMPANY.

*Findlay & Mackenzie* for plaintiff.

*Arthur W. Machen* and *William S. Bryan, Jr.,* for defendant.

DENNIS, J.—

The plaintiff is the owner of a dwelling house situated at the corner of Read and Calvert streets, along which streets the defendant operates a street railway under what is known as the trolley system. It originally used horses for its motive power, but subsequently adopted first the cable and afterwards the trolley system, under what is conceded to be proper legal authority from the Legislature and Mayor and City Council.

The plaintiff claims damages for injuries alleged to have been done to his property by reason of the erection of the trolley poles of the defendant in front of his property. These poles are erected upon the public street, the location having been duly approved by the City Comissioner, as required by the ordinance, and conform in all respects (so far as the question now under consideration is involved) to the requirements of the law. both as to location and construction. The plaintiff does not claim that any portion of his property has been "taken" in the constitutional sense. which would require that he should be first compensated therefor, nor does he claim to have been injured by reason of the negligent manner of erection or faulty construction of the poles. He frankly concedes that the erection of the poles creates no new servitude upon the street and (for the purposes of the present contention) that the poles have been erected in accordance with law and in pursuance of full legislative and municipal authority.

His contention is, and this is the sole question raised by the demurrer, that he is entitled to recover for any injury to which he may have been subjected in consequence of the erection of the defendant's poles—such as is caused by the noise of the operation of the road, the unsightly character of the structures and the many other reasons which make the running of the road in front of his property undesirable, and, therefore. to a more or less extent injurious to it.

This contention is not tenable.

I understand the law to be that when property has been once condemned as a public street it belongs thereafter for all time to the public for all such uses as may consist with, and be legitimate to, its character as a street or public highway, and that any damages an adjacent owner may suffer from any such user is *damnum absque injuria,* for which he has no remedy. No new "use" can be imposed upon it, without compensation to the adjacent owner, if such user amounts to a "taking" of his property in the sense of our constitutional provision; and he has his remedy either by injunction to prevent such "taking" or may maintain an action to recover such damages as may have resulted to him. But so long as the "use" complained of is a legitimate use of the street as a public highway he is without remedy for any consequential damage he may have suffered.

The theory upon which this principle is founded is that when property is condemned as a public street the damages which are allowed an owner are considered to be in full compensation for all injury he may undergo from the use of the property

as a street so long as it shall be used as such. New *methods* of use may arise such as were not in contemplation of the parties at the time of the condemnation, but if those methods are only a modification, or development, of old methods, and are a legitimate use of the street as "street" or public highway, and are sanctioned by the authorities to whom the control over the streets is given, the adjacent land owner is without remedy for any consequential damage that may be inflicted upon his property. Hodges vs. B. C. P. R. Co., 58 Md., 619. If, however, the street is used for purposes not germane to or consistent with its character as "street" or public highway, then such use is, in the language of the law, a "new user," and the abutting or adjacent owner can recover damages for any injury inflicted upon him by such use, although such use may have been fully authorized by legal enactment, because compensation for such use was not included in the assessment of damages when the street was condemned.

The two cases relied on by the learned counsel for the plaintiff to take this case out of the operation of the above principle are Chesapeake and Potomac Telephone Company vs. Mackenzie, 74 Md., 36, and Baltimore and Potomac Railroad Company vs. Reany, 42 Md., 117; but in my opinion neither of these cases has that effect. The former case was one in which the plaintiff sued to recover for injuries to her property caused by the erection by the defendant upon the footway in front of her premises of its telephone poles. Now, it has always been held that planting telephone poles where the telephone is used for commercial purposes is an additional servitude imposed upon the soil, which entitles the owner of the reversion to an injunction against the company to restrain it from so appropriating the land until compensation shall first be tendered, as prescribed by Sec. 40, Art. 3, of our State Constitution, or to recover damages for any injury he may have suffered; and an examination of the opinion on pages 46, 47 and 48 will show that the Court expressly placed its decision upholding the right of the plaintiff to recover upon this ground.

In Baltimore and Potomac R. R. Co. vs. Reany, 42 Md., the injury to the plaintiff's house was caused by the excavation of the street and the construction of a tunnel for the use of its railroad by the defendant, acting under legislative authority, which weakened the foundation and caused the walls to crack, and the Court held the plaintiff was entitled to recover. But it has always been held that the use of a street for purposes of a steam railroad is a new user; such a railroad is not designed for the ordinary purposes of a public highway in a city for which alone the street has been condemned; and *fortiori*, the *excavation* of a street, and the digging of a *tunnel*, is an entire departure from its proper use as a *street* —in fact, it is a destruction of it for purposes of a highway; and as I understand that case Judge Alvey expressly bases the decision upon "the *extraordinary use*" attempted to be made of the street. See pp. 132, 133.

Were the law established as contended for by the counsel for the plaintiff, then anyone, whether abutting or adjacent owner, might recover damages for any injury he may have suffered by reason of the use of the street by anyone, in any occupation, no matter how legitimate the use of the street may have been. Take the very apt illustration suggested by the junior counsel for the defendant: Suppose the Mayor and City Council should restrict the driving of hogs and cattle through the city to the line of Monument street and Mt. Vernon Place between the hours of 10 A. M. and 5 P. M. It would be a great annoyance and injury to property in that fashionable section; the right of the Mayor and City Council to enact such an ordinance cannot be disputed, because it would be the legitimate use of a street for its purposes as *street;* yet it could hardly be contended that the owners of such stock would be liable in damages to the adjacent property holders because their property was rendered less enjoyable by reason of these owners exercising their rights in compliance with the restriction of the lawful authorities. Many similar illustrations might be given. The old horse cars, with their noise and jingling of bells, the heavy wagons running over rough pavements in front of residences and the early "Arab," with his shrill cries, are annoyances and more or less an injury to residential property, but

they are making a lawful use of the street as *street*, and any consequential damage to adjacent property owners or others is *damnum absque injuria*, for which no action will lie.

The counsel for the plaintiff also relies upon Sec. 166, Art. 23, of the Code of Public General Laws in support of his right to maintain this action. This provision of the Code is taken from the Act of 1876, ch. 242, known as the General Railroad Law. By its express terms the remedy therein provided is confined to the case of railroads incorporated under that Act; and as the defendant company was incorporated by a special Act in 1861 the Act of 1876 has no application to it. Besides, in Hodges vs. Baltimore Union Passenger Ry. Co., 58 Md., 622, it is expressly decided that Sections 13 and 14 of the Act of 1876 (under which provisions the plaintiff seeks to recover) plainly "have no reference to the construction of street railways for passengers."

The demurrer will, therefore, be overruled, with leave to the plaintiff to enter replication within fifteen days.