Frazier v. Telephone Co.

S. J. A. FRAZIER *et ux. v.* EAST TENNESSEE TELEPHONE
COMPANY.*

(*Knoxville.*   September Term, 1905.)

**EMINENT DOMAIN.**  Telephone poles and wires in streets are not
an additional burden entitling abutting owner of fee to com-
pensation.

Telephone poles erected in the public streets and the wires
strung thereon for use in the operation of a public telephone
system do not constitute such additional burden upon the fee
of the abutting owners as entitles them to compensation.

Cases cited and approved: Smith v. Railroad, 87 Tenn., 626;
Telegraph & Telephone Co. v. Railroad, 93 Tenn., 492,  503.

Cases cited, distinguished, and approved: Railroad v. Bingham,
87 Tenn., 522; Smith v. Railroad, 87 Tenn., 633; Railroad v.
Doyle, 88 Tenn., 747.

For the cases cited by the counsel of each side, see pages 419-421.

---

FROM HAMILTON.

---

Appeal from the Chancery Court of Hamilton Coun-
ty.—D. L. LANSDEN, Chancellor.

MR. JUSTICE NEIL made a statement of the facts as
follows:

The question to be determined in this case arises upon
the following statement of facts, which we adopt from
the findings of the court of chancery appeals, viz.:

---

*As to the question whether telegraph or telephone poles are
an additional burden on the highway, see note to People v. Eaton
(Mich.), 24 L. R. A., 721.

"Some 20 or more years ago complainants, husband and wife, bought a tract of some seventy acres of land on the north side of the Tennessee river opposite Chattanooga. The title to this land was taken in them jointly. They platted a portion of this land into blocks, streets, and alleys, and called the land so platted and divided into streets, 'Frazier Addition.'

"This plat was made a matter of public record.

"Two of the main streets in said addition are called and known as Forest avenue and Frazier avenue.

"Complainants sold some lots in said addition with reference to its streets, and they built a residence for themselves abutting on Frazier avenue, in which they have lived.

"The defendant is a telephone company, chartered under the laws of Kentucky, and organized to furnish telephone service to the public. It has, and has had, for years, a telephone exchange in Chattanooga, and through and by the use of its equipment it gives local and long distance telephone service to the public. As a means of furnishing this service, it erects poles planted in the ground, to which it attaches wires reaching the points and patrons calling for its service.

"Some years ago, but after complainants platted their land as aforesaid, the county of Hamilton, in which is situate Chattanooga, constructed a bridge across the Tennessee river for the use of the public.

"The northern terminus of this bridge, or its northern end, extends, after crossing the bed of the river, some

distance up Forest avenue. This location of said end of the bridge on a part of said avenue was with the assent of complainants.

"As this bridge blocked to a great extent the south end of said avenue for the distance it extends along it, complainants widened said avenue along the east side of the bridge, so as to allow free access to the river, and to their bottom land immediately adjacent to the river at that point.

"The defendant, with its wires, crossed the river along said bridge, and, on reaching the north bank of the river, erected its poles on the passageway opened as aforesaid by complainants on the east side of said bridge and strung its wires thereon.

"It also erected its poles and strung its wires along or on Forest and Frazier avenues to reach and serve its patrons on that side of the river.

"The poles thus erected by it had cross-arms fastened to them, to which its wires were attached, and some of them were braced by stay poles.

"The complainants, in platting their land into lots, streets, etc., retained the fee to the land covered by the streets, and simply dedicated them to the public use as an easement way of travel.

"Under the evidence in the record, the defendant planted its telephone poles along Frazier and Forest avenues and attached its telephone wires to cross-arms fastened to said poles, and used and is using them in the operation of its business."

Section 1830 of Shannon's Code provides, among other things that telephone companies may construct and maintain lines over the public highways and streets of the State.

BURKETT, MILLER & MANSFIELD, for complainants.

WATKINS & THOMPSON and W. L. GRANBERY, for defendant.

----

MR. JUSTICE NEIL, after making the foregoing statement of facts, delivered the opinion of the Court.

The question arising on the foregoing facts is whether telephone poles and wires constitute an additional burden upon complainants' fee for which they are entitled to compensation.

In support of the liability, the following cases and text-writers are cited by complainants' counsel, viz.: *Eels* v. *Tel. Co.,* 143 N. Y., 133, 38 N. E., 202, 25 L. R. A., 640; *Tel. Co.* v. *Barnett,* 107 Ill., 507, 47 Am. Rep., 453; *Tel. Co.* v. *Eaton,* 170 Ill., 513, 49 N. E., 365, 39 L. R. A., 722, 62 Am. St. Rep., 390; *Daily* v. *State,* 51 Ohio St., 348, 37 N. E., 710, 24 L. R. A., 724, 46 Am. St. Rep., 578; *Callen* v. *Electric Light Co.,* 66 Ohio St., 166, 64 N. E., 141, 58 L. R. A., 782; *Tel. Co.* v. *Williams,* 86 Va., 696, 11 S. E., 106, 8 L. R. A., 429, 19 Am. St. Rep., 908; *Krueger* v. *Tel. Co.,* 106 Wis., 96, 81 N. W., 1041, 50 L. R. A., 298; *Stowers* v. *Tel. Co.,* 68 Miss., 559, 9 South.,

356, 12 L. R. A., 864, 24 Am. St. Rep., 290; *Tel. Co.* v. *McKenzie,* 74 Md., 36, 21 Atl., 690, 28 Am. St. Rep., 219; *Nicoll* v. *Tel. Co.,* 62 N. J. Law, 733, 42 Atl., 583, 72 Am. St. Rep., 666; *Donovan* v. *Allert,* 11 N. D., 289, 91 N. W., 441, 58 L. R. A., 775, 95 Am. St. Rep., 720; *City of Spokane* v. *Colby,* 16 Wash., 610, 48 Pac., 248; *Bronson* v. *Tel. Co.,* 67 Neb., ——, 93 N. W., 201, 60 L. R. A., 427; *Pac. Postal Tel. Cable Co.* v. *Irvine* (C. C.), 49 Fed., 113; *Post. Tel. Cable Co.* v. *Sou. Ry. Co.* (C. C.), 89 Fed., 190; *Kester* v. *W. U. Tel. Co.* (C. C.), 108 Fed., 926; Joyce on Electrical Law, sec. 321; 2 Dill. Munic. Corp. (5 Ed.); sec. 698a; Elliott on Roads and Streets, 534; Lewis on Eminent Domain, sec. 131; Croswell on El., sec. 110; Randolph on Em. Domain, sec. 407.

For the defendant the following authorities are cited, viz.: *McCann* v. *Tel. Co.,* 69 Kan., 210, 76 Pac., 870, 66 L. R. A., 171; *Magee* v. *Overshiner,* 150 Ind., 127, 49 N. E., 951, 40 L. R. A., 370, 65 Am. St. Rep., 358; *Coburn* v. *New Tel. Co.* (Ind.), 59 N. E., 324, 52 L. R. A., 671; *Irwin* v. *Great Sou. Tel. Co.,* 37 La. Ann., 63; *Pierce* v. *Drew,* 136 Mass., 75, 49 Am. Rep., 7; *People* v. *Eaton,* 100 Mich., 208, 59 N. W., 145, 24 L. R. A., 721; *Cater* v. *N. W. Tel. Co.* (Minn.), 63 N. W., 111, 28 L. R. A., 310, 51 Am. St. Rep., 543; *Julia B. & L. Ass'n* v. *Bell Tel. Co.,* 88 Mo., 258, 57 Am. Rep., 398; *Hershfield* v. *Rocky Mt. Tel. Co.,* 12 Mont., 102, 29 Pac., 883; *York Tel. Co.* v. *Keesey,* 5 Pa. Dist. R., 366; *Lockhart* v. *Craig St. Railroad,* 139 Pa., 419, 21 Atl., 26; *Kirby* v. *Citizens' Tel. Co.* (S. D.), 97 N. W., 3; *Southern Bell Tel. Co.* v.

*Francis,* 109 Ala., 224, 19 South., 1, 31 L. R. A., 193, 55 Am. St. Rep., 930; *Cumberland T. & T. Co.* v. *Avritt* (Ky.), 85 S. W., 204; *Lowther* v. *Bridgeman* (W. Va.), 50 S. E., 410.

Some other cases upon both sides of the question may be found in the citations contained in the opinions of the judges in the cases above referred to, and in the footnotes, and also in the notes to 27 Am. and Eng. Encyc. Law, pp. 1008, 1009; but in those which we have cited will be found a full and satisfactory presentation of every consideration properly entering into the inquiry.

It is obvious upon a mere casual inspection, even, that the numerical weight of authority supports the complainants' contention. The question is to be determined, however, not by numbers merely, but upon what shall appear to us the best reasons.

The case is of first impression here. It has been held by this court that steam railways, both the ordinary commercial (*Railroad* v. *Bingham,* 87 Tenn., 522, 11 S. W., 705; *Smith* v. *Railroad,* 87 Tenn., 633, 11 S. W., 709) and dummy lines (*Street Ry. Co.* v. *Doyle,* 88 Tenn., 747, 13 S. W., 936, 9 L. R. A., 100, 17 Am. St. Rep., 933), constitute an additional burden, but that street railways (*Smith* v. *Street R. R.,* 87 Tenn., 626, 11 S. W., 709; *Telegraph & Telephone Co.* v. *Elec. Ry. Co.,* 93 Tenn., 492, 503, 29 S. W., 104) do not; and it is held generally in the courts of the country that electric light poles and wires, gas pipes, and lamps posts for highway purposes, sewer pipes, and water pipes, do not.

On one side, the theory is that a proper street purpose can only be something connected with the use of the street as a passway, for moving objects, people, animals, and vehicles, or with the maintenance of ingress and egress, to and from the houses upon the street, and the passage of light and air. Under this theory it is admitted that the use of the street cannot be confined to merely old and accustomed forms of transit, but that all new forms and methods of conveyance may be employed, not inconsistent with the reasonably comfortable and safe use of the street by all; commercial railways and dummy lines being excluded from classification for street purposes, on the ground of their noise, bulk, and danger, and the unavoidable inconvenience and interruption to other kinds of use, that their presence produces. Bicycles and automobiles are of course permitted, as constituting improved modes of convenience. Street cars are permitted for the same reason, and their poles and wires as necessary adjuncts; electric light lines, and gas pipes and lamp posts, because they are used in lighting the street, and, so, in making it comfortable and safe for passage at night; sewer pipes, because they are useful in draining the street of surplus water, and so preserving it, and likewise making it more convenient for use; water pipes, because the water must be used for sprinkling the street in dry weather, and also for cleansing it. It is said that the telephone does not fall within any of the foregoing classifications, but that it is an entirely new and foreign use, and so constitutes an additional burden.

On the other side, it is said that in the widest, and, likewise, the most correct sense, a street is a means of intercommunication between the people of a city, for traffic, and for the conduct of personal and social intercourse, and also for the convenient use of dwellings and business houses abutting thereon; that its primary purpose is for passage, it is true, but that such passage need not be, alone, that of people, animals, or wheeled conveyances, or of things that run upon the ground; that a message sent through the air upon electric wires, over the street, takes the place of one sent by a man or boy walking, or upon horseback, or conveyed by a vehicle, along the street; that not only is the same service performed by the telephone, but in a manner far better, and more quickly; that if the thousands of messages which go over such wires in a single day had to be conveyed by men or vehicles, or both, the streets would be far more thronged than they now are, and hence rendered less comfortable, and less safe for use, and that in the course of a few months, or a year's time, the difference in the wear and tear of the streets would be very perceptible, because of such increased use; that the telephone is therefore but an improved method of subjecting the streets of a city to an old use, and that the poles and wires are just as necessary adjuncts to this new method as are the poles and wires of a street railway or an electric light plant, erected in substantially the same manner, and no more obstructive.

To this latter view, it is replied that the same course

of reasoning would justify the erection of a Marconi wireless plant in a city street, since this also transmits intelligence; but to this suggestion it is returned that the bulk of such a plant, and the noises necessarily attendant upon its operation would make its use impossible in such a situation, in addition to the cardinal fact that wireless messages are not used by the people of a city in communicating with each other within the city, but that such instruments are only for long distance communication.

We are of the opinion that the second view is the sounder one.

When land has been dedicated or condemned for street purposes, the city has the right not only to use the surface of the ground, but also may go beneath the surface, or above it, so far as may be necessary to adapt to its proper use the land so devoted to the service of the public. We approve the authorities which hold that the chief purpose of a street is that of intercommunication between the inhabitants or denizens of a city or town and that the telephone is but a new and improved method of affecting this purpose, and hence not a new burden upon the fee of the abutting owner. If this instrument of a larger and more generous civilization were destroyed, not only would social intercourse be very greatly restricted, but the progress of all business would be retarded and its development confined within much narrower limits than now. Friends desiring to converse with each other, whether in near or remote

parts of the city would find it necessary to leave their own houses, and proceed along one or more streets to the home of the person with whom they desired to talk, and thus consume an hour or hours in doing what may now be accomplished within a few minutes. So, of the house-wife in sending orders, or directing orders, to merchants. for the purchase of goods necessary for the daily con-duct of the home; and so in a larger way of the countless affairs of business, by men of business, in the daily life of the world. Houses are built upon streets, and peo-ple live in them, and work in them, and the telephone must go along the street, and must enter these houses. from the street, in order to be of any use at all. It must follow the street with more regularity than even sewer pipes or water pipes, and like these, must go into houses from the street in order to serve the purpose for which it was designed. It is thus distinctly an apparatus for the street, and from the street enters the houses and places of business of the denizens of a city, and as truly unites its people as do the streets themselves; and, in-deed, in a more real, or at least a more intimate, way, since it renders possible an almost instant mental con-tact, so to speak, between all the people who make the aggregate of the city's population, its wires being, as it were, the city's nerves.

For the reasons stated, we are of the opinion that the court of chancery appeals erred in rendering a decree in favor of the complainants.

The decree of that court must therefore be reversed;

but the cause will be remanded to that court to the end that it may make a suitable finding upon the matters embraced in complainants' requests for additional findings of fact upon the subject of an unreasonable use by the defendant of its right to place its poles and wires upon the streets, etc., referred to, and any other facts that will throw light upon this inquiry, and to the end that that court may dispose of this branch of the case, after eliminating from its consideration the question above discussed and settled.

SHIELDS, J., is of the opinion that the authorities first cited present the sounder view, that telephone poles and wires do constitute an additional burden upon the fee, and he therefore dissents.