# THE CONSOLIDATED GAS COMPANY *vs.* THE COUNTY COMMISSIONERS OF BALTIMORE COUNTY AND JOSEPH SCHREIBER.

*Commissioners of Baltimore County Authorized by Statute to Grant Franchise to an Individual to Lay Gas Mains in Highways,*

The Act of 1902, ch. 368, empowered the County County Commissioners of Baltimore County to grant franchises in and below the highways of that county upon certain terms.   In pursuance of that Act, the Commissioners authorized an individual to lay and maintain gas-pipes and mains in the streets of certain villages in the county.   The Acts of 1886, chapters 384 and 395 prohibited the formation of new gas companies in certain counties, of which Baltimore was one, and provided that no gas company chartered in other counties shall have the right to lay mains or sell gas in these counties.   The Consolidated Gas Co., the only seller of gas in Baltimore County, filed the bill in this case to restrain the individual to whom the Commissioners had granted the above mentioned franchise from exercising any rights thereunder, and to have the same declared void.   *Held,* that the Acts of 1886 relate only to incorporated gas companies and not to an individual manufacturing gas, and that under the Act of 1902 the Commissioners of Baltimore County are authorized to grant to an individual the right to lay gas mains in the highways of that county.

Appeal from the Circuit Court for Baltimore County (BURKE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, and SCHMUCKER JJ.

*George Whitelock* and *Edgar H. Gans* (with whom was *John Prentiss Poe* on the brief), for the appellant.

· The appellant, in consequence of the Acts of 1886, is the only gas company in the State of Maryland which may maintain pipes in the highways in question, and it has at present now an exclusive right so to do.   It has been decided that such a privilege is not within the prohibition of a State Bill of Rights aimed at monopolies.   *City of Newport* v. *Newport*

*Light Company*, 84 Ky. 176; *New Orleans Gas Light Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *City of Quincy* v. *Bull*, 106 Ill. 377.

In view of the restrictions indirectly imposed by the organic law of this State on the franchises of companies incorporated under its laws, there can scarcely exist here a monopoly of franchise for any definite length of time.   However this may be, it is insisted that, as decided by this Court in the recent injunction proceeding instituted by the County Commissioners against the appellant, 98 Md. 689, it has valuable franchises and rights in the highways of Baltimore County under and independently of sec. 110 of Art. 23 of the Code.   It is admitted, that for those franchises it has paid and is paying value. It is apparent that it is engaged in an enterprise of the highest public utility, as was pointed out by the Supreme Court in the Louisiana case already cited.

The determination of the exclusive character of the appellant's privileges is, however, quite immaterial and irrelevant to the issue at bar since, were the Acts of 1886 thrown entirely out of the case, the property rights of the appellant under its valuable franchises should be entitled to the same consideration, and it should receive the benefit of the same protection and security against their impairment or diminution through the guise of pretended grants or franchises to competitors, as it would be entitled to were it in the full enjoyment of a valid and legal monopoly.

It is obvious that the omission of "individual" from the prohibitions of the Acts of 1886 throws no light on the authority of the County Commissioners under the Act of 1902 to make the agreement in controversy.   As just stated, were the Acts of 1886 thrown out of the case altogether the question would still remain as to the extent of the *new* powers, if any, conferred upon the County Commissioners by the Act of 1902. It is the whole contention of the appellant that, neither under that Act, nor under any other law, nor as an incident of their office, did the County Commissioners have the least semblance of authority to create or to grant a franchise to an individual

or to a corporation to lay gas-pipes and gas-mains in the public highways of Baltimore County.

There is a well recognized and real distinction between the right of a municipality to grant a franchise to lay gas-pipes in its streeets, and the power of a Board of County Commissioners to grant such a franchise in the highways of a county. This distinction does not rest on the doctrine of the imposition of an additional servitude, but it is based upon the difference, in the nature of things, between the uses and purposes for which the respective highways are dedicated or are acquired and are held. *Bloomfield Gas L. Co.* v. *Calkins,* 62 N. Y. 386; *Kincaid's case,* 124 Ind. 577; *Sterling's Appeal,* 111 Pa. St. 35; *Lewis, Eminent Domain,* sec. 129.

The County Commissioners have only such powers as are conferred upon them by the law. (Const., Art. 7, sec. 1.) Their enumeration may be found in the Code of Public General Laws, Art. 25, in the Code of Public Local Laws, title, "Baltimore County," and in several Acts of Assembly passed since 1888. Nowhere in any legislation, whether general or local, relating to the County Commissioners of Baltimore County can be found, outside of the Act of 1902, ch. 368, the least intimation of a purpose on the part of the Legislature to delegate to the County Commissioners the power to grant any right whatever of any kind in the nature of or remotely resembling the franchises attempted to be conferred by the agreement in the record.

The paramount authority over streets and highways is vested in the Legislature as the representative of the entire people.

If, under this Act of 1902, the appellees could grant a franchise to lay gas-pipes and gas-mains, they could grant any other franchise in the highways of Baltimore County including even the right to construct elevated railroads or steam railroads therein. Indeed, if the Act is to be construed in accordance with the legal definition of the word "franchise" in its relation to public highways, then it is respectfully submitted that by that single piece of legislation the State of Maryland

has for the time being delegated in their plenitude its sovereign powers to grant franchises in relation to or affecting the public highways of Baltimore County.   It would, therefore, follow that in the exercise of the powers conferred upon them by the Act, the County Commissioners could annul sec. 195 of ch. 685 of the Acts of 1900, which makes it a penal offense to obstruct the public highways.   It also follows that they could put a rental value upon the obstruction of public highways by railroad trains, although sec. 217A of the same Act makes it an offense, punishable by fine of one hundred dollars, for such trains to remain standing more than fifteen minutes across the public highway.   Perhaps the Courts might have judicial power to check such aggressions, but the County Commissioners could at least say that they deemed the granting of the franchise "expedient and proper"—the only finding which they are required to make.   In *Koch* v. *North Avenue Railroad Company*, 75 Md. 232, the city of Baltiffiore passed an ordinance authorizing the construction of an elevated railroad.   The ordinance was declared invalid inasmuch as the general law prohibited the incorporation of any elevated railroad except under special charter.

There can be no doubt: *First.* That the County Commissioners have attempted to create and grant a franchise ; and *Secondly.* That unless the Act of 1902, either expressly or by implication from which there can be no escape, delegated the sovereign power of the State to the County Commissioners so as to enable them to exercise the prerogative, of granting the franchise, the agreement must fall to the ground.

The appellant does not deny that Schreiber, or any other individual, has the right to manufacture and to sell gas.   The *Supreme Court cases*, 115 U. S. 659, the *New Jersey case*, in fact the decision of this Court in the *Purnell case*, 98 Md. 589, all plainly recognize that right.

But the defendants also claim that they may use the public streets for the purpose of placing pipes therein.   This is a right which the sovereign power alone can confer.   "The rule must be considered as settled that no person can acquire a

right to make a special or exceptional use of the public high-way not common to all citizens of the State except by grant from the sovereign power. *Jersey City Gas Co.* v. *Dwight*, 29 N. J. Eq. 248-9.

In the last-mentioned case a gas company asked for an injunction against a number of individuals who had attempted to acquire the franchise in the name of a company whose incorporation and organization were effected by an evasion of the law.

It is submitted that an interpretation of the Act of 1902, which would enable the County Commissioners to grant to private individuals franchises, properly so called, including the right to lay gas-pipes in the public highways, would involve such a wide departure from the purposes for which Boards of County Commissioners were originally established, and from the duties and powers of such boards, the restricted sphere of their operations and the nature of their relation to the inhabitants of their county, as to revolutionize the entire system and to warrant them in the belief that they had incidentally the very powers which they have sought to exercise in making the agreement. The words "franchises and rights" should be construed as synonymous and as meaning such rights only as the County Commissioners are authorized by law to permit individuals or corporations to exercise.

There are doubtless many instances of the manufacture and private sale by individuals of illuminating gas in small areas, but it is probably true that there is no case of such an enterprise being conducted anywhere by an individual through means of gas-mains and pipes laid in the public highways of a county or of a city. From the nature of that business, the dangers to which neglect, inattention or defective apparatus may expose the public, and also in view of the large field which any particular enterprise must embrace in order to pay, it is doubtless true that wherever gas-pipes and mains are maintained for the transmission and sale of illuminating gas, the enterprise is conducted through the instrumentality of responsible corporations representing large moneyed inter-

ests.    Indeed, the entire character of the gas business re-
quires that it should be conducted by incorporated companies
and not by private individuals.    So it may be affirmed that
the franchises in question are of such a nature that it cannot be
supposed the Legislature would have conferred them on an
individual or meant to delegate the power to take a step which
it cannot be supposed it would itself have taken.    *Thompson
on Corporations,* sec. 6358.

Furthermore, under the Acts of 1886, the County Com-
missioners of Baltimore County could not have conferred the
franchise in question on any gas company other than the ap-
pellant.    Can it be supposed for a moment that the Legisla-
ture intended to enable the County Commissioners to confer
upon Joseph Schreiber, individually, a franchise which they are
positively prohibited from conferring upon a corporation, char-
tered for example in Harford County, and organized by re-
sponsible capitalists, with, say, a paid-up capital of ten
million dollars?    It must be presumed that the Legislature,
when it passed the Act of 1902, knew of the scope and effect
of the Acts of 1886.    Aware, as the Legislature was, of the
prohibition contained in these Acts against laying mains or
selling gas in Baltimore County, it cannot be presumed that
the Act of 1902 was intended by the Legialature to relate at
all to the subject of gas or franchises for its transmission.

*D. G. McIntosh,* and *Osborne I. Yellott,* for the appellees.

1. Chapters 384 and 395 of the Acts of 1886, Code Public
Local Laws, Art. 3, secs. 114, 115 and 116, were never in-
tended to apply to individuals.

The true rule in the construction of statutes of this charac-
ter admits of no liberality whatsoever, but requires that such
statutes shall be construed strictly.    Prior to the passage of
these Acts in 1886, any sufficient number of individuals could
have formed a gas company in Maryland under the general
incorporation laws; and any gas companies formed for the
purpose in other counties of Maryland, or any individuals,
could have sold gas and laid mains in Baltimore County.

These were matters of common right, guaranteed by both the Federal and State Constitutions, and as to individuals by the common law.   But the Acts of 1886 were passed in derogation of that common right, and hence must be strictly construed.   *Hopper* v. *Baltimore*, 12 Md. 464, 475; *Greenwood* v. *Greenwood*, 28 Md. 369, 386; *Miller* v. *Stewart*, 8 Gill, 103.

2. If the Acts of 1886 were intended to apply to individuals as well as to corporations, said Acts are unconstitutional, and the complainant has therefore no such special rights thereunder as to entitle it to maintain its bill in this cause.

These statutes are unconstitutional, if construed as contended, because they deprive the defendant, Schreiber, of liberty and property without due process of law.   Art. 23, Declaration of Rights.

They are unconstitutional if so construed, because creating a monopoly, contráry to the provision of the Declaration of Rights which says: "That monopolies are odious, contrary to the spirit of a free government and the principles of commerce, and ought not to be suffered."   Art. 41, Declaration of Rights.

They are unconstitutional, if construed as contended, because contrary to the fifth amendment of the Constitution of the United States which declares that "No person shall be deprived of life, liberty or property without due process of law."

They are unconstitutional, if construed as contended, because contrary to the first clause of the Fourteenth Amendment of the Constitution of the United States, which declares that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

3. The granting of the franchise in question was a valid exercise of the power vested in the County Commissioners of Baltimore County by ch. 368 of the Acts of 1902.

It certainly will not be contended that secs. 7 to 13, of the City Charter were not intended to empower the Mayor and

City Council of Baltimore to grant franchises in the public streets. And when we compare those sections of City Charter with the Act of 1902 we find that in Baltimore City the Mayor and City Council *"may grant"* such franchises, while in Baltimore County the County Commissioners "shall have authority to grant," terms, if anything, a little broader and more specific than the former. These terms in the case of the city have been held to authorize the granting of franchises in the streets to those who had received no legislative right to use the same for special purposes. *Balto. Co., W. & E. L. Co.* v. *Balto.*, 95 Md.; *Purnell* v. *Baltimore*, 98 Md. 589.

In other words, both these provisions of law are intended as a clear delegation, by the Legislature to the respective municipalities, of the power to grant franchises in the public highways, a power which the Legislature had previously reserved to itself.

Under the charters of a great many corporations incorporated under the general laws, or special Acts, the power or franchise to use the highways is given directly by the Legislature. These corporations already have their franchises and do not need to get them from the County Commissioners.

The Legislature has in effect said that the Commissioners shall have power to grant franchises of *every* character. It is now for the appellant to show that it meant to except the franchises to lay gas mains. And the only attempt to do this is by asserting that inasmuch as it had previously declared that *no corporations* except the Consolidated Gas Company could sell gas in Baltimore County it could not have meant by the Act of 1902, which did not expressly repeal those Acts, that an individual could be empowered to lay gas mains in Baltimore County. This is a *non sequitur* at best, and if the Acts of 1886 did not prohibit individuals operating gas works, we cannot see how any repeal of those Acts was necessary before an individual could be so empowered.

BRISCOE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for

Baltimore County sustaining a demurrer and dismissing a bill of complaint filed by the appellant against the appellees for the purpose of vacating a contract made between the appellees, and for an injunction to restrain one of the appellees from exercising certain rights and powers conferred upon him by the contract. The agreement is dated in July, 1903, and was made by and between the County Commissioners of Baltimore County and the appellee, Schreiber, under which "he was authorized and empowered to lay and maintain for the period of twenty-five years gas-pipes and mains with such connections as may be required for the purpose of furnishing gas for public as well as private lighting and for heating and other purposes, in the several streets, avenues, and alleys, so far as the same are public streets, under the control of the party of the first part, situate in the villages and towns of Orangeville, Highlandtown and Canton and in the streets and avenues connecting the same, in Baltimore County."

To the bill, a demurrer was interposed, and one of the questions thus raised, did the County Commissioners of Baltimore County, have power to make the contract and grant the franchise, here in dispute, under the provisions of the Act of 1902, ch. 368. The title of this Act is an Act to legalize and regulate the granting of franchises for public purposes by the County Commissioners of Baltimore County.

It will be seen that by the first section of the Act it is provided that no franchise or right in relation to any highway, avenue, strecet, lane or alley, either on, above or below the surface shall be granted by the County Commissioners of Baltimore County, unless certain requirements of the Act are complied with.

By the second section, it is provided, if no valid objection is made to the granting of such franchise, and it appear to the board that the granting of the same is expedient and proper, the board shall have authority to grant such franchise, for such money compensation as it shall * * * determine— every grant of any such franchise, shall make provisions * *.

By sec. 3 when the grant of a franchise or right is made

the County Commissioners shall not part with, but shall expressly reserve the right and duty, at all times to exercise full municipal control and regulation in·respect to all matters connected with the grants not inconsistent with the terms thereof. And by sec. 4, it is provided, that nothing in this Act shall be construed as affecting any private rights or the rights of adjacent landholders as now held and enjoyed by law.

It is perfectly manifest, we think, that by the true construction of this Act, that the County Commissioners of Baltimore County, had full power to make the contract here in controversy, and to grant to the appellee Schreiber, the rights conferred by it.

But the appellant, insists that under the Act of 1886, ch. 384 and 395 (now Art. 3, sec. 114, 115 and 116, P. L. Laws of Baltimore County) it enjoyed the exclusive privilege to lay mains and sell gas in that county.

But we do not so read and construe those Acts. They were Acts, as indicated by their titles, affecting the formation of gas companies in Baltimore City, Baltimore and Anne Arundel Counties, and they distinctly prohibit the formation of gas companies in those counties, and also provide that no gas companies chartered in any other counties of the State shall have the right to lay mains or sell gas in the counties. And to repeal and annul charters for gas companies, except as therein provided.

Now according to the language and meaning of these Acts, they were never intended to apply to individuals, but relate solely to incorporated and chartered gas companies, and therefore have no bearing upon the decision of this case.

Nor do we find any force in the appellant's contention that the franchise granted the appellee in this case "affected any private rights," previously granted it. The 4th sec. of the Act of 1902, simply protects vested rights in the streets and highways of Baltimore County, and prohibits their destruction by the County Commissioners, in making contracts under the Act.

There were other questions presented and argued at the hearing, but as those passed upon by us are conclusive of the case, we shall not discuss them here.

We agree with the conclusion reached by the Circuit Court for Baltimore County, in holding that the appellant has no exclusive right to lay mains and sell gas in that county, and that the County Commissioners had full power, under the Act of 1902, ch. 368, to grant the franchise in question, the appellee having complied with the requirements of the Act. So, for the reasons given by us, the order of the Circuit Court for Baltimore County dated on the 11th of November, 1903, sustaining the demurrer and dismissing the plaintiff's bill will be affirmed.

*Order affirmed, with costs.*

(Decided June 8th, 1904.)