# THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF BALTIMORE CITY

*vs.*

# PHILLIPS LEE GOLDSBOROUGH, ET AL., CONSTITUTING THE MARYLAND STATE BOARD OF FORESTRY, ET AL.

*State Board of Forestry: roadside trees; jurisdiction over—;*
*Chapter 824 of Acts of 1914; right of owners of fee under*
*highways. Police regulation: courts, duty of—;*
*arbitrary regulation. Constitutional law:*
*delegation of power to governmental*
*agencies. Private property and*
*public rights.*

Chapter 824 of the Acts of 1914, in requiring a permit from the State Board of Forestry for the trimming or removal of roadside trees on the public highways, does so as a regulation merely, and not as a possible prohibition of proprietary rights.

p. 672

It was designed to prevent interference with trees on the public highways, by persons acting without interest; but vested ownership is to be respected, and the law is not to be construed as meaning that a permit could be denied to one having a valid right of property in such trees.

p. 672

Subject to qualification under special conditions, the general rule is that in the case of ordinary highways the public acquires only an easement of passage and its incidents, and, subject to this servitude, the owner of the soil is entitled, except so far as required for highway purposes, to the earth, timber and grass growing thereon, and to all minerals, quarries and springs below the surface.                              p. 673

While the owner of the fee in a public highway has property rights in the natural products of the soil within the highway limits, his right to their use or disposition is subject to such restrictions as the nature of the servitude demands.      p. 673

The right of the owner of the soil, subject to the use of a public highway, to fell or trim trees growing thereon, is capable of being exercised to the prejudice of the superior interest, and is a proper subject of legislative regulation.          p. 673

The police power of a State embraces regulations designed to promote the public convenience, or general prosperity, as well as regulations to promote the public health, morals or safety.                     ,          pp. 673-674

In deciding whether particular classes of acts are proper subjects of regulation under the police power, it is not the duty of courts to determine the extent or gravity of the necessity for its exercise.                              p. 674

The essential inquiry is whether the conditions to which the power is proposed to be applied may reasonably be regarded as a possible source of injury to the public interest that is sought to be protected.                          p. 674

Even though the need of regulating the removal or trimming of roadside trees should not be urgent, yet legislative action to that end is so related to the promotion of the public rights and interests in the highways as to bring the statute within the scope of the State's police power.                     p. 674

While the State may have the right to apply the police power to a specific purpose, yet the regulations prescribed for the enforcement of the power must not be arbitrary and unreasonable.                          pp. 674-675

There is no constitutional prohibition against delegating to a public board or commission, serving as a governmental agency, the duty of fixing the fees to be charged for a public service.

p. 675

In the absence of any evidence or charge that the State Board of Forestry has established, or will establish, unreasonable rates or charges, in connection with the permits and inspection, in the matter of removing and trimming trees on the public highways, it is not to be presumed that the charges would be unreasonable.

p. 675

The interests of individuals are subordinate to the public good, and the constitutional guarantees of the security of private property do not operate to prohibit the restriction of its use for the public welfare within the sphere of the police power.

p. 676

*Decided April 7th, 1915.*

Appeal from Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Shirley Carter* (with a brief by *Bernard Carter & Sons*), for the appellant.

*Edgar Allan Poe, the Attorney-General,* for the appellees.

URNER, J., delivered the opinion of the Court.

It is provided by the Act of 1914, Chapter 824, that the "State Board of Forestry shall, in addition to the powers

heretofore granted it, have the power to plant trees along the roadsides, to make all rules and regulations governing their planting, to care for and protect all roadside trees of this State, and to establish one or more State Forest Nurseries for the propagation of trees for such roadside planting." The Act defines roadside trees to mean "all trees planted by the Forest Wardens, or existing trees three inches or more in diameter measured two feet from the ground that may be growing within the right of way of any public road or between the curb lines and property lines of any street in an incorporated town in this State." After other provisions, not necessary to be noted, it is enacted that the "State Forester may, in his discretion, * * * plant, care for and protect roadside trees and pay for such work out of any unexpended balance" of the funds appropriated for the purposes of the Act, "provided, however, that no trees shall be planted under the provisions of the foregoing sections without the consent and approval of the owner of the land on which they are planted." The statute further provides that: "Any person or persons who may desire to cut down or trim any roadside tree shall make application to the State Board of Forestry for a permit. Any person or persons who shall cut down, trim, mutilate or in any manner injure any roadside tree, except in an emergency as hereinafter provided for, without the permission of the State Board of Forestry, or its duly authorized representative, shall be guilty of a misdemeanor, and upon conviction shall be punishable by a fine of not less than $5.00 or more than $50.00 for each offense." There is a provision that for the services of the State Forester "in examining conditions when permits are applied for under" the clause we have quoted, and for "issuing permits, and supervising the work authorized by such permits, he shall be paid by the person or corporation applying for the permit," and that the rates to be so paid shall be determined by the State Board of Forestry.

The bill of complaint in this case was filed by the Chesapeake and Potomac Telephone Company of Baltimore City.

It alleges that under the powers conferred upon it by law, the company has constructed and now maintains and operates telephone lines consisting of poles and wires, and their necessary fixtures, upon and along the margins of public highways in nearly all the counties, and elsewhere, in the State, but that, as the right thus granted by law could affect only the easement of the public in the highways, it was necessary for the company to acquire by purchase from the owners of the fee in the land occupied by such highways the right and easement to construct and maintain its poles, wires and fixtures in the margins thereof, and the further right to trim or cut the branches of trees there growing, which were the property of the owners of the fee, in order to keep the branches from coming in contact with the wires, as it would otherwise be impossible for the company to operate its system efficiently, for the reason that such contact results in the current of electricity on the wires being deflected to the ground, whereby the utility of the lines is seriously impaired. The averment is then made that among the numerous owners of the fee in lands lying within the margins of highways, and of the trees growing thereon, from whom the company had purchased the necessary rights and easements previously specified, were certain designated residents of Montgomery County, whose deeds granting such privileges were exhibited with the bill, together with plats showing the sections of highway and the location of the trees to which the deeds refer. The next allegation is, in substance, that the branches of these trees were found to be seriously interfering with the operation of the company's lines, and it was preparing to trim the branches in the exercise of the right acquired under the grants mentioned, but it was advised that the State Board of Forestry claimed the right, by virtue of the Act of 1914, Chapter 824, to require the company to obtain a written permit from the board for the trimming of the trees, and to pay charges, to be by it determined, for the examination of conditions and the supervision of the work. It is averred by the bill that the only property or interest held by the State

of Maryland or Montgomery County in the highways in question is an easement for public travel, and that neither the State nor the county has any right or title to the trees growing in the margin of the highways affected by the deeds exhibited, but that such trees were the property of the respective abutting owners at the time of the execution of the deeds, and the right to trim the trees was thereby vested in the plaintiff company, and that the Act of 1914, in so far as it prohibits the company from exercising its rights with respect to the trees, without first obtaining permission of the State Board of Forestry and paying the charges for examination and supervision by it determined, which would subject the plaintiff to an expense of at least $10,000.00 annually for such work throughout the State, is unconstitutional and void in that it deprives the plaintiff of its property without compensation and without due process of law, within the meaning of the State and Federal Constitutions. It is prayed, therefore, that the Act may be declared invalid on the ground stated, and that the State Board of Forestry, and their officers and agents, may be enjoined from interfering with the plaintiff company in reference to the trimming of the trees referred to, and from requiring any charges to be paid by the plaintiff for the examination of conditions and supervision of such work as contemplated by the statute. An order was passed by the Court below, upon consideration of the bill, refusing the injunction prayed, and the plaintiff has appealed.

It is the evident purpose of the legislation under inquiry to promote the interests of public travel, and to develop and conserve the value of public property, by establishing a system of roadside tree planting and protection for the highways of the State. In providing means and agencies for that purpose, however, the Act does not proceed upon the theory that the public interest in the highway embraces the entire title to the land upon which it is located and that the abutting owners have no rights in the soil thus occupied which are entitled to be considered. On the contrary it is assumed by the

statute that such rights exist, and the intention is plainly indicated that they are not to be disregarded. The Act goes so far as to provide that no roadside trees shall be planted under the State's own authority without the consent of the owner of the land. It may be doubted whether it was necessary for the Legislature to impose this restraint upon the power of the State to improve its thoroughfares for the public benefit in the manner proposed, but the provision gives evidence of a disposition to recognize to their full extent subsisting private interests in the soil of the highways. The requirement of a permit from the State Board of Forestry for the trimming or removal of roadside trees, so far as it affects proprietary rights, is clearly provided as a regulation merely, and not as a possible prohibition, of their exercise. It was undoubtedly designed to prevent any such interference with trees on the public highways by persons acting without interest, but as the context of the law makes it manifest that vested ownership is to be respected, we are not at liberty to construe its provisions as meaning that a permit could be denied to one having a valid right of property in trees growing on the roadside. When application is made for a permit to cut down or trim such trees, it is contemplated that an examination of conditions may be necessary, and when the permit has been issued, the work is intended to be done under official supervision. If the applicant appears to have the requisite rights in the premises, and the conditions are found to be then suitable for the performance of the work, consistently with the public interests in the highway, it is the obvious purpose of the statute that the permit shall be granted. The provision that the trimming or removal of the trees shall be done under the supervision of the State Forester is obviously and exclusively for regulative purposes.

The owner of the fee in land used as a public highway has interests which are well recognized and are not here disputed. Subject to qualification under special conditions, the

general rule is that in the case of an ordinary highway the public acquires only an easement of passage and its incidents, and the owner of the soil subject to this servitude is entitled, except so far as required for highway purposes, "to the earth, timber and grass growing thereon, and to all minerals, quarries and springs below the surface." *Chesapeake & Potomac Telephone Co.* v. *Mackenzie,* 74 Md. 47. But these rights, though important and undoubted, are subordinate to the use for which the land has been acquired by the public. They cannot be utilized in such manner or under such conditions as to interfere with the free and full enjoyment of the public easement. While the owner of the fee may have a property interest in the natural products of the soil within the highway limits, his right to their use or disposition is subject to such restriction as the nature of the servitude imposed upon the land may necessitate. A road side tree, even if conceded in a given case to be the property of an abutting owner and not required for any use incident to the easement, could not rightfully be cut down or trimmed by his direction without regard to the safety and convenience of public travel. The exercise of such a privilege may be attended with danger or delay to those using the highway, or it may possibly in some instances produce injuries to the surface of the road. It is a right which is capable of being exercised to the prejudice of a superior and vested public interest, and hence it would appear to be a legitimate subject of regulation.

The authority of the Legislature to make reasonable provision for the protection of highway easements cannot be seriously disputed. Apart from any consideration for the public property interests involved, it is clearly competent for the State to promote the convenience and secure the safety of travelers upon its highways by the application of its police power. It has been held, upon the highest authority, that "the police power of a State embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety." *Chicago, B. & Q. R.*

*Co.* v. *Illinois*; *ex rel. Grimwood,* 200 U. S. 592. In *Deems* v. *Baltimore,* 80 Md. 173, it was said to be the inherent right of every organized government to provide "for the safety and welfare of its people." The scope of the police power is given the same liberal definition in *State* v. *Gurry,* 121 Md. 534; *Cochran* v. *Preston,* 108 Md. 220; *State* v. *Hyman,* 98 Md. 596, and other cases.

In deciding whether particular classes of acts are proper subjects of regulation under the police power it is not the duty of the Court to determine the extent or gravity of the necessity for its exercise. The only essential inquiry is whether the conditions to which the power is proposed to be applied may reasonably be regarded as a possible source of injury to the public interest sought to be protected. Unless the exercise of the power in the statute under review is without any apparent relation to any of the objects to which it is applicable, the legislative authority is not subject to judicial interference. In the case now before us the validity of the Act in question does not depend upon a conclusion that the right of the public to a safe and unobstructed use of the highways is *seriously* jeopardized by the unregulated cutting down and trimming of roadside trees. The imminence of such danger is, of course, less appreciable on country highways than on the streets of incorporated towns, to which the Act also applies. But even though the need of regulating the removal and trimming of roadside trees should not appear to be urgent, we are unable to hold that legislative action to that end is so unrelated to the promotion of the public rights and interests in the highways, and so plainly in excess of the police power of the State, as to justify the Court in declaring it invalid. *Schmidinger* v. *Chicago,* 226 U. S. 578; *Eubank* v. *Richmond, Ib.* 137; *McLean* v. *Arkansas,* 211 U. S. 547; *Mugler* v. *Kansas,* 123 U. S. 623; *State* v. *Gurry, supra.*

It is well settled, however, that while the right of the Legislature to apply the police power to a specific purpose may be ascertained or conceded, the regulations prescribed in the en-

forcement of the power must not be arbitrary and unreasonable, and it is contended that the Act of 1914 is in conflict with this principle in delegating to the Board of Forestry the right and duty to fix the charges to be paid for the inspection of conditions prior to the issuance of permits and for subsequent supervision of the work authorized. The bill, as already noted, alleges that the plaintiff Telephone Company would thus incur an expense of at least $10,000.00 annually in connection with the trimming of trees along its lines in the State of Maryland, but it is not stated upon what scale of charges this aggregate amount is calculated. There is no averment that the Board of Forestry has established rates which are unreasonable or excessive. The power complained of was doubtless committed to the board because a more detailed knowledge of local conditions, and more frequent opportunities for revision, than the Legislature possessed, would be necessary to a determination of the proper amounts to be charged from time to time for the services rendered. It is to be presumed that the authority thus conferred is being exercised with a fair and just regard for the interests affected. There is no constitutional prohibition against the delegation of such a function to a public board or commission, serving as a governmental agency; 8 *Cyc.* 834; *People* v. *Harper,* 91 Ill. 357. The objection we are considering must therefore be overruled. This is an entirely different question from that raised in the case of *Ulman* v. *Baltimore,* 72 Md. 587, which the appellant has cited. In that case an assessment of the cost of street improvements, charged upon the owners of abutting lots, and creating a lien on their property, without any previous notice or opportunity to be heard being given them, was held to be void upon the ground that it amounted to a taking of property without due process of law. The present case involves no analagous conditions to which the principle of that decision could be properly applied. No tax or lien is here being imposed, and it would be impracticable, as it is unnecessary, for the board to notify, in advance of the fixing of the rates, all prospective appli-

cants for permits under the Act, or to make a separate ruling as to rates in the case of each application.

In view of our conclusion that the Act of 1914 is sustainable as a valid exertion of the police power of the State we can have no difficulty in disposing of the contention that it is repugnant to the constitutional provisions against the taking of property without due process of law and the appropriation of private property for public use without just compensation. There is no divesting of property rights by the operation of the Act, and the regulation to which the exercise of such rights is thereby subjected is not prevented by any limitation upon the authority of the Legislature prescribed by the Federal or State Constitution. The interests of the individual are subordinate to the public good, and the constitutional guaranties of the security of private property were not designed and do not operate to prohibit the reasonable restriction of its use by legislation enacted, within the sphere of the police power, for the promotion of the public welfare. *Chicago, B. & Q. R. Co.* v. *Illinois, ex rel. Grimwood,* 200 U. S. 584; *Crowley* v. *Christensen,* 137 U. S. 86; *Mugler* v. *Kansas,* 123 U. S. 623; *Barbier* v. *Connolly,* 113 U. S. 27; *State* v. *Hyman,* 98 Md. 614; *State* v. *Broadbelt,* 89 Md. 578; *Deems* v. *Baltimore,* 80 Md. 173; *Etchison* v. *Frederick City,* 123 Md. 289; 6 *Ruling Case Law,* sec. 194. The statutory provisions under consideration appear to be appropriate to the public purposes sought to be accomplished, and they certainly cannot be said to be so devoid of "real or substantial relation to these objects" as to justify the Court in declaring the Act invalid. *Mugler* v. *Kansas, State* v. *Hyman, supra.*

The order refusing the injunction will be affirmed.

*Order affirmed, with costs.*