PUBLIC SERVICE COMMISSION *v.* MARYLAND
GAS TRANSMISSION CORPORATION.
[No. 42, January Term, 1932.]

*Decided April 8th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William Cabell Bruce* and *John Henry Lewin,* for the appellants.

*James Piper* and *Francis J. Carey,* with whom were *Piper, Carey & Hall* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

On July 8th, 1931, the appellants, the Public Service Commission of Maryland, passed the following order: "Ordered: (1) That Maryland Gas Transmission Corporation be and it hereby is directed and required forthwith to obtain proper franchises to lay, maintain and operate its pipes under the public roads crossed by the line of the said Maryland Gas Transmission Corporation, and to present the said franchises to the Commission for its permission and approval, as by law required. (2) That a copy of this order be forthwith served upon the said Maryland Gas Transmission Corporation, and that the said corporation within ten (10) days of the date of the service of such copy shall notify the Commission in writing whether or not it will accept and abide by the same."

In response to said order the appellee, on July 15th, 1931, notified the commission in writing that it would not accept and abide by the order, but proposed within the time limited by statute to bring a proceeding to vacate and set aside said order. Thereafter, on September 5th, 1931, the appellee filed its bill of complaint in the Circuit Court No. 2 of Baltimore City, praying that the said order of the commission be vacated and set aside. On September 11th the commission demurred on the ground that the complainant had not stated such a case as entitled it to any relief in equity. On December 3rd, 1931, the chancellor passed an order overruling the appellants' demurrer to the bill of complaint, with leave to answer. The appellants declined to answer, and the appeal in this case is from the order overruling the demurrer.

For the purposes of the demurrer we must accept the allegations of fact contained in the bill of complaint as true, the substance of which may be stated as follows: "That the plaintiff is a corporation duly organized and existing under the laws of the State of Delaware; that it caused to be constructed during the months of September, October, November, and December, 1930, and January, 1931, a gas transmission line from a point on the boundary between the states

of Maryland and Pennsylvania, two miles east of the Susquehanna River in Cecil County, Md., for a distance of approximately seventy-four miles in a fairly straight direction, to a point about two miles northwest of Rockville, Montgomery County, Md.; that this line has been maintained and operated by the plaintiff at all times since January 30th, 1931; that subsequently it caused to be constructed an extension of said pipe line to a point on the boundary between the states of Maryland and Virginia, about five miles southwest of Rockville, which line has been maintained and operated by the plaintiff at all times since May 30th, 1931; that the total length of said pipe line, including extension, is approximately seventy-nine miles; that said pipe line passes through a small portion of Cecil County and across the counties of Harford, Baltimore, Howard, and Montgomery, in the State of Maryland; that the pipe line was constructed for the plaintiff by the Columbia Gas Construction Company, a Maryland corporation; that the plaintiff is a public utility corporation engaged in the business of transmitting gas at high pressure, into, through, and from the State of Maryland and of selling gas so transmitted by it to other corporations, public or private, or persons, firms, associations, or other organizations which are now or may hereafter be engaged in the business of selling gas to the public in the State of Maryland, the District of Columbia, or elsewhere; that the plaintiff has not transmitted or sold, and does not intend to transmit or sell, any gas in Maryland, except gas purchased by it at high pressure at the Maryland-Pennsylvania state line or at the Maryland-Virginia state line; that the plaintiff has not sold, and does not intend to sell, any gas except at high pressure and except to corporations, public or private, or persons, firms, associations, or other organizations not affiliated with the plaintiff, which are or may hereafter be engaged in the business of supplying gas to the public in Maryland, the District of Columbia, or elsewhere, and to affiliated corporations at the Maryland-Pennsylvania state line and at the Maryland-Virginia state line; that the plaintiff has not been engaged, is not engaged, and does not intend

to engage in any business in Maryland except the business aforesaid; that the gas so transmitted by the plaintiff is natural gas and will be transmitted at a maximum pressure of 450 pounds per square inch; that said pipe line passes through no incorporated towns or villages, but solely through strictly country properties, 247 in number, and upon rights of way acquired by purchase from the various landowners by the plaintiff and conveyed to it by deeds properly executed, acknowledged, and recorded; that said pipe line is, however, at several points where it crosses under public roads, within a mile or two from several small towns or villages, one of which, namely Rockville, is incorporated, but all said roads at said crossings are strictly country roads; that said pipe line has been laid and is now being maintained and operated by the plaintiff across and under a number of public roads, both improved and unimproved, in the said counties; that said public roads have been acquired by the public authorities, but for road purposes only, by condemnation, grant, or prescription; that, in cases where proceedings or grants have not been found relating to such roads, they have in every instance been utilized and are now utilized by the public as public roads, have been and are controlled and maintained by the respective county commissioners or other public authorities, and are in fact public roads; that the plaintiff has taken from every owner of land abutting on each of said public roads, where the pipe line of the plaintiff crosses under the same, a deed granting to it a right of way thereunder; that the fee of each of said roads where the pipe line of the plaintiff crosses under the same was, on the respective dates of said deeds, owned by the respective abutting owners from whom the plaintiff obtained said deeds, subject, however, to the public easement therein of passage and its incidents; that said pipe line across and under said roads is in all cases laid within the rights of way granted by said deeds and in accordance with the terms thereof; that in no case does said pipe line run along any such road, nor is it the intention of the plaintiff to supply any gas in any such road to others or to construct any lateral or branch line along any such road;

that the only relation of such roads, or any of them, to said pipe line, is that of obstacles which have to be crossed, and said pipe line is placed thereunder solely for the purpose of crossing the same; that in some cases the pipe line is as near to the surface of the road as twenty inches, but does not interfere in any way with the use of any of said roads at existing or presently proposed grades by the public for passage, or with the fitting or maintaining of any of such roads at existing or presently proposed grades for passage by the public; that the plaintiff obtained from the county commissioners of each of the five counties, in which its said pipe line is laid, permits to construct said pipe line across and under the public county roads in the respective counties, and also obtained from the State Roads Commission permits to construct its said pipe line across and under the public roads known as state roads; that the pipe line was physically constructed in strict compliance with the rules and regulations governing such physical construction of the State Roads Commission and of the county commissioners of the five counties through which its line passes, including the requirements set forth in the several permits, and in strict compliance with the directions of the engineers supervising the work on behalf of the public authorities by which such permits were issued; that said line is of the best and most modern construction and of indefinite life and utility, and will in all probability be utilized continuously by the plaintiff, or its successors or assigns, in its present location for the next hundred years or more, subject to changes required by relocation of roads and changes of grades of roads; that, promptly upon the organization of the plaintiff, it presented to the defendant a copy of its certificate of incorporation, together with all information with respect to its plans which the plaintiff believed to be material, and all additional information with respect thereto which it was requested to give; that subsequently the defendant submitted said certificate of incorporation and said information, or such part thereof as it deemed to be relevant, to its general counsel with the request that he advise the commission whether or not it should re-

quire the plaintiff to apply to it for its permission and approval under section 390 of article 23 of the Code (1929 Supplement); that in an opinion rendered to the defendant under date of August 23rd, 1930, the general counsel to the defendant ruled that, under the decisions of the Supreme Court, the plaintiff was under no obligation to apply to the defendant for its permission and approval before beginning construction, and in said opinion the general counsel reserved the question as to how far the permission and approval of the defendant would be necessary were the plaintiff to undertake local business; that in conformity with said opinion the plaintiff did not apply to the defendant for its permission and approval before beginning construction; that the construction was begun on or about September 25th, 1930, and was proceeded with in all respects in conformity with the plans of which it informed the defendant; that on December 10th, 1930, a complaint was filed with the defendant by a citizen in Baltimore County, following the filing of which the commission by its order instituted a complaint against the plaintiff, reciting, among other things, that complaint had been made to the defendant that the plaintiff had laid and was engaged in laying its pipe line in a permanent way under the public roads of the counties through which the said pipe line passed without obtaining from the county commissioners of said counties proper franchises therefor, and in particular, as regards Baltimore County, without complying with section 611 of Offutt's Code of Public Local Laws of Baltimore County and without obtaining permission and approval of the defendant before exercising such franchises; that on December 15th, 1930, the plaintiff filed its answer to the complaint of the defendant, and on January 5th, 1931, the defendant held a hearing upon its complaint; that in compliance with the request of the defendant for an opinion in relation to the three legal questions developed by the testimony at the hearing aforesaid, the general counsel to the defendant, under date of January 28th, 1931, rendered an opinion to the defendant, holding: (1) that the natural gas to be transmitted by the plaintiff in

Maryland would be an interstate commodity; (2) that, assuming the testimony taken at said hearing to be true, the legal effect thereof was to negative any intent on the part of the plaintiff to engage in local business; and (3) that the plaintiff had no right to lay its pipe line across any public highway in Baltimore County without first complying with the provisions of section 611 *et seq.* of the Revised Code of Public Local Laws of Baltimore County, which section declares that no franchise or right in relation to any highway, avenue, street, lane, or alley, either on, above, or below the surface of the same, shall be granted by the County Commissioners of Baltimore County until the provisions of that section relating to advertisement of the application for such franchise or right, compensation therefor, etc., shall be gratified; that said opinion does not touch upon the question of whether or not the plaintiff requires franchises to maintain its pipe line across and under public roads in any other county; that under date of July 8th, 1931, the defendant, by its order No. 17,413, in case No. 3175, after reciting that it was the opinion and finding of the defendant that the plaintiff had "failed to obtain from the boards of county commissioners of the several counties traversed by the pipe line of said corporation franchises authorizing it to lay, maintain and operate its pipes under the public roads crossed by the line of the said Maryland Gas Transmission Corporation and to present the said franchises to the commission for its permission and approval, as by law required," directed and required the plaintiff "forthwith to obtain proper franchises to lay, maintain and operate its pipes under the public roads crossed by the line of the said Maryland Gas Transmission Corporation, and to present the said franchises to the commission for its permission and approval, as by law required"; that said order of July 8th, 1931, does not state what laws in the opinion of the defendant require the plaintiff to obtain from the boards of county commissioners of the several counties franchises to lay, maintain, and operate its pipe line under the public roads therein; that the order of the commission of December 11th, 1930, and the opinion

of its general counsel of January 28th, 1931, refer as to Baltimore County to section 611 *et seq.* of the Code of Public Local Laws of Baltimore County, and there exists in Montgomery County a similar statute, codified as sections 772 to 775, inclusive, of the Code of Public Local Laws of Montgomery County; the plaintiff, however, has been unable to find any franchise law in Cecil, Harford, or Howard counties; that no claim has been made by the State Roads Commission or by the county commissioners of any of said five counties, or by the counsel of any of them, that the plaintiff requires a franchise to construct, maintain, or operate its pipe line across and under any of such public roads; that the question of whether or not it was necessary for the plaintiff to obtain a franchise to entitle it to construct, maintain, and operate the pipe line across and under the public county roads of Baltimore County was, however, orally raised by the author of the complaint filed with the defendant under date of December 10th, 1930, and the County Commissioners of Baltimore County thereupon obtained an opinion of their counsel thereon; that said opinion advised said county commissioners that they were acting wholly within their rights and legally in granting a permit to the plaintiff without requiring the plaintiff to apply for and obtain a franchise; that with this single exception, and with the exception of the commission and its counsel, no one in any of said five counties or elsewhere has claimed that the plaintiff requires any such franchise; that plaintiff is dissatisfied with the order of the commission passed on July 8th, 1931, and brings this suit to vacate and set aside said order on the ground that said order is unlawful, first, because the defendant is without jurisdiction to direct or require it to obtain franchises to lay, maintain, or operate its pipe line across and under public roads as aforesaid, second, because the enforcement of the order complained of would deprive the plaintiff of property without due process of law, in contravention of the Fourteenth Amendment of the Constitution of the United States, third, because it would disseize the the plaintiff of its freehold, liberties, and privileges, or de-

prive it of its property, in contravention of article 23 of the Declaration of Rights of Maryland, fourth, because its enforcement would burden interstate commerce, in contravention of clause 3 of section 8 of article 1 of the Constitution of the United States, fifth, because neither of the said Public Local Laws of Baltimore County or Montgomery County, nor any other law, purports to require it to obtain a franchise thereunder to entitle it to lay, maintain, or operate its pipe line across and under any of said public roads, and further, that, if any such law were construed to require the plaintiff to obtain a franchise thereunder to entitle it to lay, maintain, or operate its said pipe line across and under any of said public roads, the said law would to that extent be in violation of clause 3, section 8, article 1, and of the Fourteenth Amendment, of the Constitution of the United States, and article 23 of the Declaration of Rights of Maryland, sixth, because the defendant is without jurisdiction to direct or require it to present any franchises for its said pipe line, if acquired, to the defendant for its permission and approval, and, seventh, because, if the Public Service Commission Law of Maryland were construed to require the plaintiff to present any such franchise to the defendant for its permission and approval, such would be to that extent unconstitutional and void, in that it would burden interstate commerce in contravention of clause 3, section 8, article 1 of the Constitution of the United States.

The appellants make four main contentions: (1) That the commission had ample statutory power to pass the order requiring franchises to be obtained and submitted to it for its approval, provided the appellee was required by law to obtain such franchises. (2) That the fact that the appellee is a foreign corporation does not relieve it, before invading the public easement and its incidents, from the necessity of satisfying the requirements relating to the obtaining of franchises which are imposed on domestic corporations engaged in similar business. (3) That the fact that the appellee claims to be engaged in interstate commerce does not relieve it, before invading the public easement and its incidents, from the

necessity of satisfying the reasonable requirements relating to the obtaining of franchises which are imposed by the state on corporations engaged in intrastate business. (4) That the fact that the highways crossed are rural county highways, the fee simple title to which, subject to the public easement and its incidents, is in the abutting owners, while it requires the appellee to obtain permission from the abutting owners, does not relieve it from the duty of obtaining franchises or rights from the county commissioners also.

In the view which we entertain in respect to the case made by the record, it is unnecessary for us to discuss or determine the questions raised by the appellants' contentions, except the fourth contention as above recited. It is at once apparent that the validity of the order of the commission passed on July 8th, 1931, must be dependent upon whether or not there is some law which requires the appellee to obtain a franchise from the proper authorities of the counties through which the pipe line passes, in order that it might legally place the said pipe line under the bed of the public roads located in the respective counties, for the sole purpose of crossing the road. Or, stating the proposition in another way, unless there is some general or local law requiring the obtention of a franchise from the county authorities before the obstacle presented by a public road to the laying of the plaintiff's pipe line can be overcome, the Public Service Commission could have no authority to pass the order herein attacked. It requires no argument or citation of authority to support the proposition that, if this pipe line, although passing through a portion of the State of Maryland, did not cross any public road, it would not be subject to the jurisdiction of the Public Service Commission of this state. The validity or legality of the order passed by the commission, therefore, must depend upon the commission's jurisdiction and power to compel the plaintiff in this case to obtain such franchise or franchises as are required by the general or local laws of this state. It follows that the primary and all-important inquiry is whether there is any general or local law which requires the plaintiff, under the facts set out in the bill of complaint,

to obtain a franchise to cross a public road in the manner and at the points alleged. These allegations are that, before beginning construction, the plaintiff inquired of the commission and was told, in a written opinion by its general counsel, that its business as proposed was interstate, and that so long as it retained that character it did not have to apply to the commission for its permission and approval to erect, maintain and operate said pipe line; the language of the opinion being: "If the intent of the corporation is to construct a pipe line over the State of Maryland, but not itself to distribute gas from it to Maryland consumers, it is under no obligation, in my opinion, to apply to the commission for its permission and approval before beginning construction or exercising its franchise within the State of Maryland." The opinion of the general counsel of the commission on this point is fully supported by the cases of *Bush v. Maloy*, 267 U. S. 317, 45 S. Ct. 326, 327, 69 L. Ed. 627; *Buck v. Kuykendall*, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623; and *State of Missouri v. Kansas Gas Co.*, 265 U. S. 298, 44 S. Ct. 544, 68 L. Ed. 1027. This opinion was confined to the question of whether the plaintiff should apply to it for permission and approval agreeable with the provisions of section 390 of article 23 of the Code (1929 Supplement), and did not attempt to decide the question of whether or not, if there should be a local law applicable to any of the counties through which the pipe line passes, requiring it to obtain a franchise to cross a public road, such franchise should be submitted to the commission for its approval.

Section 611 of article 3 of the Code of Public Local Laws of Maryland, the title of said article being "Baltimore County," provides: "No franchise or right in relation to any highway, avenue, street, lane or alley, either on, above or below the surface of the same, shall be granted by the County Commissioners of Baltimore County until the following provisions shall be complied with: (1) The application for such franchise or rights shall be published by the applicant once a week for three successive weeks in two newspapers published in Baltimore County and having general circulation, setting

forth the location, character and extent of the franchise sought; (2) upon the first publication of said notice it shall be the duty of the said County Commissioners to make diligent inquiry as to the money value of the franchise or right asked to be granted, and the adequacy of the compensation proposed to be paid therefore; (3) if any objection is made to the granting of the franchise asked by any person or persons interested therein, either as taxpayers or having property rights involved, and filed in writing with the secretary to the Board before the expiration of said notice, opportunity shall be granted and a time set for the hearing of such objections." Section 612, after prescribing the period for which the franchise may be granted, provides: "Every grant of any such franchise or right shall make provisions, by way of forfeiture or otherwise of the grant, for the purpose of compelling compliance with the terms thereof and to secure efficiency of public service at reasonable rates and the maintenance of the property in good condition throughout the full term of the grant." And section 613 further provides: "When the grant of a franchise or right is made in compliance with the aforegoing sections, the said county commissioners shall not part with, but shall expressly reserve the right and duty at all times to exercise full municipal control and regulation in respect to all matters connected with said grant not inconsistent with the terms thereof." Section 614 provides: "Nothing in sections 611 to 613, inclusive, shall be construed as affecting any private rights or the rights of adjacent landholders as now held and enjoyed by law." By sections 772 to 775, inclusive, of article 16 of the Code of Public Local Laws, title "Montgomery County," the provisions of the local law for Baltimore County are, in practically identical language, made applicable to Montgomery County.

The provisions of these local statutes are quite broad and comprehensive, using the language: "No franchise or right in relation to any highway, avenue, street, lane or alley, either on, above or below the surface of this same, shall be granted," etc.; but in providing that no franchise or right

shall be granted unless certain designated provisions are complied with, they presuppose the right of the county commissioners to grant such a franchise; and the right to grant a franchise equally carries with it the right of refusing or withholding the grant thereof. As a necessary consequence, the sovereign power must own or control the object or thing upon which the franchise is predicated. In 26 *C. J.* 1033, it is said: "There must be some parting of the prerogative belonging to the king or to the people to constitute a franchise. If the right in question is one acquired otherwise than by special grant from the government, it is not a franchise." *Bank of Augusta v. Earle,* 13 Pet. 519, 10 L. Ed. 274; *Southampton v. Jessup,* 162 N. Y. 122, 56 N. E. 538; *Hazelton Boiler Co. v. Hazelton Tripod Boiler Co.,* 137 Ill. 231, 28 N. E. 248; *State v. Gibbs,* 82 Vt. 526, 74 A. 229; *Kelly v. Consol. Gas Co.,* 153 Md. 523, 138 A. 487.

The question is presented: Do the County Commissioners of Baltimore or Montgomery Counties possess any prerogative which would be parted with by the granting of a franchise to the appellee for the purpose and under the circumstances set forth in the bill of complaint? It is alleged by the plaintiff that the county commissioners have an easement of way in the roads under which its pipe line has been placed; and further, that these roads are country highways at all of the places where the pipe line passes thereunder, and are not in, contiguous, or near to any town, city, or village; or, in other words, at all of the places where the pipe line crosses under the roads, they are highways in the open country. This being true, the inquiry is: Having obtained the easement of way in such locations, what did the public authorities acquire thereby? It is certain that they became possessed, for the benefit of the public, of the right of passage, together with all the incidental rights legally thereto appertaining. As stated in *Crullen v. Edison Elec. Co.,* 254 Mass. 93, 149 N. E. 665, 666: "The easement which the public possess in the free and unobstructed right to use the public highways for all purposes of travel, including the conveyance of persons, the transfer of goods and transmission of

intelligence, is a public right, belonging to the public." In *Bosley v. Susquehanna Canal,* 3 Bland, 63, it was said: "A right of way, whether public or private, is essentially different from a fee simple right to the land itself over which the way passes. A right of way is nothing more than a special and limited right of use; and every other right or benefit derivable from the land, not essentially injurious to, or incompatible with the peculiar use called the right of way, belongs as absolutely and entirely to the holder of the fee simple as if no such right of way existed. He is, in fact, for every purpose considered as the absolute owner of the land, subject only to an easement or servitude; he may recover the land so charged by ejectment; he may bring an action of trespass against any one who does any injury to it, not properly incident to an exercise of the right of way; he has a right to the trees growing upon it; to all minerals under its surface; he may carry water in pipes under it; and the freehold with all its profits, not inconsistent with the right of way, belong to him."

When an owner of the fee in the open country, where an easement of way has been granted for the use of the public, lays a pipe line under the road in such manner as in no way to interfere with the maintenance of such way and the free and unobstructed passage thereover by the public, he is not seeking a privilege or franchise which may be granted or withheld by the county commissioners. He is merely exercising one of the incidents of ownership which, in conveying the easement of way, he has retained to himself. *Colegrove Water Co. v. Hollywood,* 151 Cal. 425, 90 P. 1053. There is a logical and important distinction between the incidents accompanying or pertaining to an easement of way in a city street and highways in the open country, because the uses to which the surface and the sub-surface are usually put are different in the one case from the other. When an easement of way is obtained in a largely built-up community, whether it be an incorporated town or not, and whether the easement be obtained by condemnation, grant, or prescription, there goes with the way, as appurtenant thereto, the

right to use the sub-surface for all such purposes as the laying of conduits for sewer, gas, water, and the like. In such cases the damage awarded in condemnation, or the consideration for the conveyance, includes and covers the possibility of such future use. This, however, is not true in respect to highways in the open country.

Judge Cooley, in his Constitutional Limitations, 556, draws a distinction between streets taken or dedicated for city or town purposes, and country highways; and this distinction has been recognized in former decisions of this court. In *Hiss v. Baltimore & Hampden Ry. Co.*, 52 Md. 242, after citing the distinction made by Judge Cooley, it was said: "This distinction, if supported by authority, upon which we do not pass, cannot and ought not to apply in this case; for, although the way is not technically within the city limits, its location, in such near proximity thereto, as an entering way into the city and exit therefrom; and in fact, as an extension of one of the city streets it must, and ought to be regarded as subject to the same burdens in the way of use which would legitimately fall on the street, of which it is, at the place in question, only an extension." In the case of *Chesapeake & Potomac Tel. Co. v. Mackenzie*, 74 Md. 36, 21 A. 690, 693, Judge McSherry, speaking for the court, said: "The use to which streets in a town or city may be lawfully put are greater and more numerous than in the case of an ordinary road or highway in the country. With reference to the latter, * * * as we have just observed, all the public acquires is the easement of passage and its incidents, and hence the owner of the soil parts with its use only, retaining the soil, and by virtue of this ownership is entitled, except for the purposes of repair, to the earth, timber and grass growing thereon, and to all minerals, quarries and springs below the surface. But with respect to streets in populous places the public convenience requires more than the mere right of way over and upon them. They may need to be graded, and therefore the municipal authorities may not only change the surface, but cut down trees, dig up the earth, and may use it in improving the street, and may make cul-

verts, drains and sewers upon or under the surface. Pipes may also be laid under the surface when required by the various agencies adopted in civilized life, such as water, gas, electricity, steam and other things capable of that mode of distribution."

In *Water Co. v. Dubreuil,* 105 Md. 424, 66 A. 439, 440, the previous cases were reviewed, and it was there stated: "The law is well settled that, although the fee of streets in cities and towns is in the abutting owners, it is subject to the paramount right of the public for all proper street uses, which include gas and water pipes, sewers, etc. Lights, water and drainage are so essential to the comfort, health, protection and convenience of the people of a city or town that the original owner is conclusively presumed to have known, and to have consented, that such uses could be made of a street laid out over land formerly owned by him, however it be acquired by the municipality, and those claiming under him have no more rights in the streets than he had. * * * But the great weight of authority is to the effect that there is a distinction between the use of streets in cities and towns for gas and water pipes, and the use of country or rural highways. See 14 *Am. & Eng. Ency. of Law,* 921, 30 Id. 438, 15 Cyc. 671, Ib. 683, 2 *Abbott on Mun. Cor.,* 1166, and *Thornton on Oil and Gas,* sec. 505, where many cases will be found in the notes. In *Mackenzie's Case,* 74 Md. 47, 21 A. 690, the distinction is recognized and reasons given for it." In *Chesapeake & Pot. Tel. Co. v. Board of Forestry,* 125 Md. 666, 94 A. 322, 324, this court said, speaking through Judge Urner: "The owner of the fee in land used as a public highway has interests which are well recognized and are not here disputed. Subject to qualification under special conditions, the general rule is that in the case of an ordinary highway the public acquires only an easement of passage and its incidents, and the owner of the soil, subject to this servitude is entitled, except so far as required for highway purposes, 'to the earth, timber and grass growing thereon, and to all minerals, quarries and springs below the surface.' * * * But these rights, though important and undoubted, are

subordinate to the use for which the land has been acquired by the public. They cannot be utilized in such manner or under such conditions as to interfere with the free and full enjoyment of the public easement." The court then goes on to decide that, although the telephone company, by contract with the owners of the fee, had the right to trim or cut down trees that might interfere with its poles and wires, it nevertheless was under the necessity of applying, in accordance with the statute, to the board of forestry for permission to perform those acts; for the reason that it was within the province of the Legislature, and as an exercise of the police power, to require that the trimming or removal of the trees be done in such manner as not to interfere with the public easement. The right to do the act was not denied, but the manner or method of doing it was required to be under state supervision.

In *Kincaid v. Indianapolis Nat. Gas Co.*, 124 Ind. 577, 24 N. E. 1066, it is said: "The owner of the fee in a suburban highway has a special proprietary right distinct from that of the public, and this right cannot be taken without compensation. * * * The rule declared by our own cases is in harmony with the very ancient and well-settled rule that the public acquires, except in cases where the seizure of the fee is authorized, nothing more than a right to pass and repass, and the great weight of authority sustains the doctrine laid down by our decisions. There is an essential distinction between urban and suburban highways, and the rights of abutters are much more limited in the case of urban streets than they are in the case of suburban ways. We note the distinction between the classes of public ways, and declare that the servitude in the one class is much broader than it is in the other; but it is not necessary to here mark with particularity the difference between the two classes of public ways, for we are here concerned only with suburban ways. Subject to the right of the public, the owner of the fee of a rural road retains all right and interest in it. He remains the owner, and, as such, his rights are very comprehensive. * * * The appropriation of the land for a

rural highway did not entitle the local officers to use it for any other than highway purposes, although they did acquire a right to use it for all purposes legitimately connected with the local system of highways. * * * The authorities, although not very numerous, are harmonious upon the question that laying gas-pipes in a suburban road is the imposition of an additional burden, and that compensation must be made to the owner."

By these authorities, and others which might be cited to like effect, it is settled that there is a legal and logical distinction between what the public acquires by an easement of way in a city street or in a road in a populous and built-up community, and that acquired by a right of way in the ordinary country road or highway in the open country. Recognizing this distinction, as previously done by decisions of this court, and giving effect thereto, we hold that the owners of the fee in the bed of the road described in the bill of complaint retained all of the title and right of ownership not inconsistent with the easement granted; that retaining this ownership and these rights, the holders of the fee are entitled to lay pipes across and under the bed of said road, for any purpose which would not obstruct the full exercise of the granted easement of way. Having this right, they can convey it to another; which the bill alleges they have done by proper conveyances. If the appellee could have projected its pipes under and across the road without disturbing the surface or interfering in any way with the continued maintenance of the public easement, it would not have been necessary to obtain authority from any one except the owners of the fee. It, however, being necessary in this case to disturb the surface of the road, it became necessary to get that permission from the county commissioners of the various counties in which the roads were located, or the State Roads Commission, as the case might be. This consent, according to the allegations of the bill, they have secured. If, as we hold, the County Commissioners of Baltimore and Montgomery Counties have only such right under the bed of the road in the open country as entitles them to maintain the

public easement of way, with the incidents legally attachable thereto, and the use of the subsurface not being incidental to the maintenance of the way, but remaining the property of the owner of the fee, then the county commissioners possess nothing which they could grant or refuse to grant; and no franchise is necessary.

In both the local laws for Baltimore and Montgomery Counties there is contained a provision that the sections relating to a franchise or right in relation to highways shall not be construed as affecting any private rights or the rights of adjacent landowners as now held and enjoyed by law. By this language the Legislature clearly preserved the rights of the adjacent landholders as they theretofore existed. These sections of the Baltimore County Code were under consideration by this court in *Consol. Gas Co. v. Balto. County*, 99 Md. 403, 58 A. 214, wherein a franchise had been granted by the county commissioners to Joseph Schreiber for the laying of gas pipes and mains in the several streets, avenues, and alleys, so far as they were public streets under the control of the county, situate in the villages and towns of Orangeville, Highlandtown, and Canton. The contest there was between the grantee of the franchise and the Consolidated Gas Company, which claimed the exclusive right of furnishing gas in Baltimore County; and it was there held that the county commissioners were empowered to grant such a franchise. While the case turned on another point, it is differentiated from the case now under consideration, because the franchise there permitted the use of the streets in built-up communities as distinguished from a highway in the open country. So in the case of *Kelly v. Consol. Gas Co., supra,* the court considered the question of the necessity of a franchise for the use of the streets of the town of Havre de Grace by a corporation for the purpose of furnishing heat and light to the town and the inhabitants thereof. For the reason given, there is no conflict between that decision and this opinion.

Nothing that we have here said is intended to affect in any manner the right of those in control of the roads under

which the appellee's pipe passes to improve, reconstruct, or change the grade of the road, should the same become necessary or convenient for the proper exercise of the easement of way. Should any such changes become necessary or expedient for the purposes stated, the appellee will be under the obligation to replace its pipe so as to conform to such changes.

The order of the chancellor overruling the demurrer being in accord with the views herein expressed, the same will be affirmed.

*Order affirmed, with costs.*